# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT,

## JANUARY TERM, 1874.

[No. 2,667.]

## JOHN H. RUTENBERG *v.* CHARLES MAIN, EZRA H. WINCHESTER, AND THOMAS R. HAYES.

STATUTE OF FRAUDS AS TO SALE OF LAND.—The Statute of Frauds only requires that the memorandum in writing for the sale of land shall be signed by the vendor or his agent. It need not be signed by the vendee, and need not be a specialty; and the power to an agent to make it may be given verbally.

MEMORANDUM IN WRITING BY AGENT FOR SALE OF LAND.—A memorandum in writing, made by an agent for the sale of the land of the principal, which declares that the agent has sold the land on account of the principal, and which is signed by the agent as attorney in fact for the principal, is sufficient in form, and is executed in such a manner as complies with the Statute of Frauds.

AUTHORITY OF BROKER EMPLOYED TO SELL LAND.—The authority of a mere broker, employed to sell real estate, is limited to the power of finding a purchaser satisfactory to the principal; but if the language of the principal, used in making the employment, clearly shows that he intended to give the agent a power more extensive than that of a mere broker, and to authorize him to make a written memorandum of sale, the Court will so find, and will enforce the written contract made by him.

ENFORCING CONTRACT FOR SALE OF LAND.—If, in a case where both the vendor and vendee act through agents in the sale and purchase of real estate, a written memorandum of sale is made by the agent of the vendor.

and delivered to the broker of the vendee, and the circumstances show that the broker of the vendee was authorized by him to make the purchase, and that the vendee accepted of the delivery of the written memorandum to his broker as a delivery to him, and knew what its contents were, the contract will be enforced against the vendee.

JUDGMENT IN CASE OF MISJOINDER OF PARTIES DEFENDANT.—If there are several defendants, and the complaint avers a joint contract made by all the defendants, when, in truth, it was made by a part only, and the answer denies the contract, but does not specially set up a misjoinder of parties defendant, the plaintiff should not fail as against all the defendants, but should have judgment against those defendants who joined in the contract, while the other defendants should have judgment in their favor.

APPEAL from the District Court, Fifteenth-Judicial District, City and County of San Francisco.

The complaint averred that the plaintiff owned a lot on Battery Street, San Francisco, and that, about September 29th, 1868, he, by his agent, sold it to the defendants, as partners, for $50,000 in gold coin, $2,500 to be deposited with Maurice Dore & Co. until a deed of conveyance was executed by the plaintiff, who was at Bremen, in Germany; the balance of the purchase money and the $2,500 to be paid when the deed was received. That defendants, by Maurice Dore & Co., agreed in writing to pay the purchase money on receiving the deed, the plaintiff paying one quarter of the taxes then due on the property. That on or about December 15, 1868, the plaintiff, by his agent, tendered to the defendants a deed of the property, and demanded payment, but the defendants refused it. There was a prayer that the defendants be adjudged to specifically perform, and that the plaintiff have judgment for $50,000, and that the Court decree him a vendor's lien on the lot to secure the purchase price.

The answer denied that the defendants were partners, and denied that they made the contract, but did not specially set up a misjoinder of parties defendant. The answer also denied that the defendants authorized Maurice Dore & Co. to agree to pay the purchase money, or that the agent of the plaintiff was authorized to sell the premises. All the material allegations of the complaint were denied. The

Court found the allegations of the complaint true, and rendered judgment for the plaintiff according to the prayer. The defendants moved for a new trial, and filed a statement July 21, 1870.

From this statement it appears that the plaintiff, who had been a resident in San Francisco in 1866, went to Germany to reside, and when he left gave a power of attorney to Charles Meinecke to manage his business in San Francisco, and to lease his real estate and collect rents, without power to sell the lot in dispute. There were two stores on the lot in dispute which were rented, and Meinecke collected the rents. August 26, 1868, the plaintiff wrote to Meinecke from Bremen, Germany, in which he said: "Could my property there no more be rented so as to bring one per cent. per month on the value, I am, with the exception of the Clay street property, which must bring $10,000 before it can be sold, as much inclined to sell the same, than to hold on any longer. * * * You valued Spear street property at $15,000, and Battery street property at $50,000. Can the prices be got, you can close the sales. I should confirm per telegraph, and then send power of attorney as soon as a guarantee deposit would have been made; and if afterwards the purchaser should want a deed, I can send it too." In a former letter to Meinecke, dated July 28, 1868, the plaintiff said: "If you can get a binding offer of over $50,000, I may conclude to sell at once. In this case, please telegraph." This letter referred to the Battery street lot.

Upon the receipt of the letter of July 28th, Meinecke called on Maurice Dore & Co., who were real estate brokers, and informed them that the property was for sale at $50,000.

In September, Dore told Meinecke they had a purchaser at $50,000, and called for an abstract of title and the title papers, which were given to him, and he receipted for them.

On the twenty-ninth of September, Meinecke executed and delivered to Dore & Co., a paper called "Exhibit E," in the opinion, of which the following is a copy:

" I have this day sold to Messrs. Main & Winchester, for account of J. H. Rutenberg, the property situated on the east side of Battery street, between Sacramento and California streets, belonging to said Rutenberg, for the sum of fifty thousand dollars ($50,000) in gold coin, payable as follows, viz.: Twenty-five hundred ($2,500) dollars to be deposited in the hands of Maurice Dore & Co. until a deed of conveyance, duly executed, is received from said Rutenberg, when the balance of the purchase money, viz.: forty-seven thousand five hundred ($47,500) dollars shall be immediately paid, it being understood and agreed that the purchasers shall have possession of the property from and after the first proximo.

" San Francisco, September 29th, 1868.

"CHARLES MEINECKE, [Seal.]
"Attorney in fact for J. H. Rutenberg.

" Signed, sealed and delivered in the presence of H. A. Cobb."

Meinecke had received the letter of August twenty-sixth, before he executed this paper.

In the early part of October, Meinecke had a conversation with Winchester, in which he said his lawyer would take his time about examining the title papers, but he expected in a few days to know what he would do. On the ninth of October, Maurice Dore & Co. gave Meinecke the following:

"MR. MEINECKE—Dear Sir: Messrs. Main & Winchester have deposited with us two thousand five hundred dollars on the purchase of the Battery street property belonging to J. H. Rutenberg, sold to them for fifty thousand dollars, coin, and are prepared to pay us the balance for him on reception of proper deed. Mr. Rutenberg will have to pay the proportion of one quarter the taxes now to be paid.

" Respectfully,          MAURICE DORE & Co.

" San Francisco, ninth October, 1868.

" N. B.—Messrs. M. & W. enjoy the use of the property from the 1st inst.

"M. D. & Co."

This, and the paper signed by Meinecke September twenty-ninth, were executed as parts of the same transaction.

Dore & Co. went to Main & Winchester when Meinecke first spoke to them, and told M. & W. they had the property for sale at $50,000, and M. & W. said they would take it, and they made the deposit mentioned in the foregoing papers on the day it was written. About the same time Meinecke had conversations with M. & W. about the purchase, and they admitted having made it. About the eleventh of October, Winchester told Meinecke his approval of the title had been finished and accepted, and Winchester requested M. to settle for the rent, which M. had collected on the first of October, and told him Mr. Hayes would settle it at the store of M. & W. Meinecke called at the store and made the settlement, and received the following receipt:

"Received from J. H. Rutenberg four hundred dollars, being one month's rent of two stores, No. 218, 220 and 222, 224, on Battery Street, bought of him on the first of October, 1868, said rent, being in advance from October 1, to November 1, 1868, in accordance with the leases made by him to the present occupants, Messrs. Lewis Brothers and Prosper May.

" SAN FRANCISCO, October 12, 1868.

" $400, gold coin.

                                " MAIN & WINCHESTER."

Meinecke did not collect the rents after this. Main & Winchester collected the rent for November and December, 1868, and then some arrangement was made by which the tenants paid the rent to the California Trust Company. Main & Winchester informed Lewis, one of the tenants, that they had purchased the property.

When Main & Winchester made the deposit referred to in the paper signed by Dore & Co., Dore & Co. informed them that they had signed the document and made the purchase for them. Dore & Co. gave Meinecke a deed of the property to be sent to Bremen, to Rutenberg, to be executed by him. Meinecke forwarded it, and Rutenberg exe-

cuted it November 11, 1868, and sent it to Meinecke. He carried it to Winchester and asked for the money. W. said he would submit it to his attorney. A short time afterwards, Main & Winchester objected to the form of the acknowledgment of the deed, and refused to accept it. Meinecke then tendered it. Main & Winchester soon after made a tender of the $50,000 to Meinecke and demanded a deed, but he replied he had no deed but the one he had the other day. Main & Winchester then tendered the rent they had collected from the tenants. Main & Winchester soon after withdrew $2,000 of the deposit they had made with Dore & Co., allowing Dore & Co. to keep $500, for their commissions. In January, 1859, Rutenberg sent to Meinecke, from Bremen, a power of attorney authorizing him to execute a deed to Main & Winchester for the property. The defendants appealed.

The other facts are stated in the opinion.

*A. J. Gunnison,* for Appellants, argued that the agreement was within the 8th Section of the Statute of Frauds, and that there was no mutuality in the contract because Meinecke had no power to bind Rutenberg by a written contract, and cited *Duffy* v. *Hobson,* 40 Cal. 243; Browne on Frauds, Sec. 511; *Blum* v. *Robertson,* 24 Cal. 127; Fry on Specific Performance, Sec. 286; *Parkhurst* v. *Van Courtland,* 1 John Ch. 282; *Duvall* v. *Meyers,* 2 Md. Ch. 401; and *Tyson* v. *Watts,* 1 Md. Ch. 13. He also argued, that Dore & Co. had no authority to execute any written instrument to bind the appellants, and cited *Davis* v. *Shields,* 26 Wend. 362, and *Coles* v. *Browne,* 10 Paige Ch. 537. He further argued that, as the partnership between the defendants was not proved, and a joint contract was not proved, that the decree against the defendants jointly was error.

*McAllisters & Bergin,* for Respondents, argued, that the letter of August 26th, 1868, authorized Meinecke to execute the contract, and that if the letter was not clear, the surrounding circumstances showed the intention of the writer, and that intention must prevail, and cited, *Saunders* v. *Clark,*

29 Cal. 304; *McNeil* v. *Shirley*, 33 Cal. 206; *Very* v. *Levy*, 13
How. U. S. 358; and *Leroy* v. *Beard*, 8 How. 451.   They
also argued that it was not necessary that the authority to
Meinecke should be under seal, and cited, *Love* v. *Sierra
Nevada L. & M. M. Co.* 32 Cal. 654; *Owen* v. *Frink*, 24 Cal.
171; *Lawrence* v. *Taylor*, 5 Hill, 112, *Worrall* v. *Munn*, 1
Seld. 241; and Brown on Statute of Frauds, Sec. 370.   They
also argued that the contract of sale was valid, because the
two papers signed by Meinecke and Dore & Co., were parts
of the same transaction, and cited, *Vanzine* v. *Taylor*, 18
Ark. 65; *Lavering* v. *Fogg*, 18 Pick. 540; *Newhall* v. *Burt*, 6
Pick. 157; and Brown's Statute of Frauds, Sec. 550, and
that parol authority to either Meinecke or Dore & Co. was
sufficient, and cited, Story on Agency, Sec. 50, and *Pringle*
v. *Pringle*, 53 Barb. 20.

By the Court, McKINSTRY, J.:

The writing—Exhibit E—signed by Meinecke, as attorney
in fact for the plaintiff, was sufficient in form, and was exe-
cuted in such manner as complied with the Statute of Frauds.
The statute only requires that the memorandum of sale of
real property shall be signed by the vendor, or his agent.
(Act concerning fraudulent conveyances, Sections 8 and 9.)
The writing need not be a specialty, and it is well settled
that a power to execute simple parol contracts may be
verbal.

It is said Meinecke had power to find a purchaser satis-
factory to the plaintiff, but none to make or sign the mem-
orandum. It is true that the power of a mere broker is thus
limited, although he be employed "to sell" real estate, be-
cause these words are construed with reference to the actual
purpose of his employment.   But if the language used,
regarded in the light of the surrounding circumstances,
clearly shows that the agency is intended to be more exten-
sive than that of a broker, the Court will so find.

*Duffy* v. *Hobson*, 40 Cal. 243, has been cited as estab-
lishing a different rule, but this it does not do, as is made

apparent by the closing words of the opinion in that case: "While it is true that the power to sign the name of a principal to a contract of sale may be given verbally, we think that the words used for the purpose should be distinct and clear in their meaning and import, and should with the requisite degree of certainty manifest the intention of the principal to do something more than merely to employ a broker." That the plaintiff intended and clearly expressed his intention that Meinecke should do more than discharge the functions of a broker is apparent from the evidence.

In the month of July the plaintiff, who was at Bremen, wrote to Meinecke in respect to the property in controversy: "If you can get a binding offer of over $50,000, I may conclude to sell at once. In this case, please telegraph. * * * If you have a good offer, I can simply confirm it by telegraph. You have a deposit made, and I will then send power of attorney," etc. Upon the receipt of this, Meinecke placed the lot with Maurice Dore & Co., brokers, for sale at fifty thousand dollars; and about the fifth of September was informed by them that they had a customer who was willing to pay the price demanded. Subsequently, Meinecke received a letter from the plaintiff dated August 26th, which contained the following passage: "You valued Market street property" (the lot now in question) "at $50,000. Can the price be got, you can close the sale. I should confirm per telegraph, and then send power of attorney as soon as a guarantee deposit would have been made." September 11th, the plaintiff again writes, acknowledging the receipt of a telegraphic dispatch from Meinecke, and adds: "I at once sent you the following telegram: 'At $50,000, the lowest, sale confirmed.'"

From the foregoing, and other corroborative circumstances in the record, it clearly appears it was intended that, on the receipt of the dispatch confirming his preliminary action, Meinecke should be clothed with power to do all the law requires to make the sale binding on his principal. Whether he was authorized to enter into special covenants on behalf of the plaintiff is not a question arising in this case; he was authorized to execute the memorandum which

rendered the sale valid under the Statute of Frauds. Afterwards, and on the 29th of September, the memorandum (Exhibit E) was signed.

The proof that Maurice Dore & Co. were authorized to complete the purchase on the part of the defendants, is clear and convincing. The defendants paid to Maurice Dore & Co. their commission as brokers; they deposited with them—soon after the memorandum was made—an additional sum of $2,500, to abide the arrival of a deed, as required by the terms of the contract contained in the memorandum; they expressed their willingness to take the deed which did arrive, except for the recital in it of a "gold coin" consideration, and an informality in the acknowledgment. These facts, and others presented by the testimony, show that the defendants authorized and ratified the conduct of Maurice Dore & Co., and that they knew the contents of the memorandum, and accepted its delivery to the brokers as a delivery to themselves.

With the exception of that now to be considered, we find no material error in the record.

By the forty-fourth section of the Practice Act it is provided that, if too many persons are joined as defendants and the fact does not appear on the face of the complaint, it must be taken by answer or it will be deemed waived (*Gillam* v. *Sigman*, 29 Cal. 637.) The section applies equally to actions *ex contractu* and *ex delicto*, and to the extent necessary to give it effect controls the principle that the proofs and allegations must correspond. But this only means that if the evidence does not connect all the defendants (and the misjoinder has not been specially pleaded) the plaintiff shall not fail as against all. Each of the defendants is still entitled to use the joint denial that the contract was made, for his individual protection, and in case there is a failure of evidence as to any one, that one should have a decision or verdict in his favor. In the present case there was no sufficient evidence that the defendant Hayes was a party to the contract averred in the complaint. It follows that he was entitled to a judgment in the court below.

Judgment affirmed as to the defendants Main and Win-

chester and reversed as to defendant Hayes, who shall recover his costs on appeal.

Neither Mr. Justice CROCKETT, nor Mr. Justice RHODES, expressed an opinion.