[L. A. No. 2060.   Department One.—July. 2, 1908.]

BELLE G. STEMLER, Appellant, v. T. M. BASS, Defendant and Respondent; NELLIE O. GARVER, Intervener.

AGENCY TO SELL REAL ESTATE—AUTHORIZATION MUST BE IN WRITING.—
In the absence of subsequent ratification an agreement in writing purporting to be executed by an agent for the sale of real property belonging to his assumed principal is not binding on the latter, unless authorized in writing by the principal.

ID.—AUTHORITY OF AGENT TO MAKE CONTRACT OF SALE—EVIDENCE—
RATIFICATION—ESTOPPEL.—In an action by a vendee to specifically enforce a contract for the sale of land executed by an alleged agent of the vendor the evidence is reviewed and held to show that the agent was not authorized to make the contract sued on, or any contract of sale on behalf of the vendor, and that his only authority in addition to finding a purchaser was to consummate a purchase by paying the purchase price to a designated bank, in accordance with instructions given to it, and thereupon accepting a deed deposited with the bank, and that the principal had not ratified the contract and was not estopped to repudiate it.

ID.—AGENT MERELY TO SELL CANNOT EXECUTE CONTRACT FOR SALE.—
The ordinary authority of a real estate agent deputed to sell real estate is simply to find a purchaser, and he has no power to bind his principal by a contract of sale unless it appears that it was intended to confer such additional authority. Whether it was so intended or not is to be determined from the language used regarded in the light of the surrounding circumstances.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Wm. F. McLaughlin, and Earle & Creede, for Appellant.

John D. Pope, and Wellborn & Wellborn, for Respondents.

ANGELLOTTI, J.—This is an action by the vendee to enforce specific performance of an alleged contract for the sale of a lot of land in Huntington Park, Los Angeles County. Defendant had judgment and plaintiff appeals from such judgment and an order denying her motion for a new trial.

Plaintiff's claim is based on a written instrument executed on January 3, 1905, by one J. S. Hadden, purporting to act as the agent of defendant T. W. Bass, owner of the land, which is as follows:—

"LOS ANGELES, CAL., January 3rd, 1905.

"Received from Belle G. Stemler $50.00 (fifty dollars) as deposit on purchase of property owned by T. W. Bass, (now of Broken Bow, Nebr.) said property located and being lot 13, block 31, Huntington Park, Los Angeles County, Cal. The balance, .$800.00 (eight hundred dollars) to be paid on transfer of the said property, clear of all encumbrances, except mortgage of $1200.00, now held by one Katherine Kramer, which the said purchaser, Mrs. Belle G. Stemler, agrees to assume.

"The amounts above specified, namely $800.00 and the $50.00 deposit, constituting $850.00 the entire equity of T. W. Bass, as per instruction of letter addressed to J. S. Hadden, dated December 28th, 1904, the said terms and amount being accepted by the purchaser.

"Signed by agent of T. W. Bass,

"J. S. HADDEN."

The trial court found that Bass never conferred authority on Hadden to execute any contract of sale of the land, that the only authority conferred on him was to find a purchaser for the same, that Hadden had no authority to sell the same except for cash, payable immediately in bank to the credit of Bass, and that Bass withdrew the authority conferred before Hadden had made any sale in accordance therewith. The principal question on this appeal is as to the sufficiency of the evidence to sustain these findings.

Unless the agreement made by Hadden with plaintiff was authorized in writing by Bass, it was, of course, not binding upon him (Civ. Code, sec. 1624, subd. 5), unless subsequently ratified. Plaintiff seeks to show such authority in certain letters and written directions sent by Bass from the state of Nebraska, where he was residing. Bass had left California for Nebraska early in September, 1904. He had endeavored to sell this property before leaving, but had been unable to do so, and left the property in charge of Hadden, with directions to see what he could do about selling it. On the day he left,

he told Hadden that if he could get twenty-one hundred dollars for the property, to sell it. There was a mortgage of twelve hundred dollars thereon, which the purchaser was to pay or assume, and the balance of the purchase money was to be paid to the owner. The first written evidence of any authority was contained in a letter from Bass to Hadden, dated September 12, 1904, wherein he said: "How did you come out with the deal on the house? I wish you would push that sale through lively as I am in need of the money." On October 19, 1904, he wrote Hadden that he had decided not to sell at present, but desired him to get a good tenant from month to month, upon certain terms. On October 26th he wrote him again that he had decided to sell, and that for the next sixty or ninety days would take nine hundred dollars net for his equity in the property. November 22d, replying to a message from Hadden that he had an offer of two thousand and fifty dollars for the place, he wrote to accept it, and let him know to whom the deed was to be made, and "I will send it to the Los Nat'l Bk., and the money can be paid there and take up the deed. Hope you will get everything through all O. K." On November 23d he wrote, stating that he had received a message to the effect that the deed should be made to Hadden, and stating: "I am sending the deed to Southern California Savings Bank and instructing them that upon the payment of $850 to be forwarded to me and you accepting the mortgage for $1200 in favor of Mrs. Katherine Kraemer and also the payment of $14.24 to Mr. Burbank for the insurance policy they shall then turn over to you the deed." On November 28th, he inclosed the deed to Hadden made subject to the mortgage, the purchaser assuming the same, to such bank, with directions to deliver the same upon payment to it of eight hundred and fifty dollars, and $24.50 insurance, and to forward such money when so paid to him. On December 14th, he wired Hadden to take up the deed, as he needed the money. On December 28th he wrote Hadden that he had paid up the insurance, and said: "Now, . . . I am in need of some money awfully bad and if you can possibly find me a buyer that will pay $850 and take up that deed, let them have it. . . . I will write the bank to accept $850 and turn over the deed, and purchaser to accept the mortgage of course. I do hope you can dispose of it." On the same day he

wrote to the bank: "I have paid up the insurance and also the interest to date, so upon the payment to you of $850, you can then turn over to them the deed and send me a draft for the amount." On January 3, 1905, Hadden wired him: "Your place sold. Letter explaining. Advise bank about deed." On January 4th, he wrote Hadden, acknowledging receipt of the message, and stating that he would await the letter before advising the bank further about the deed, and that he had an offer from another party but would give Hadden the preference, if the terms were as good as those of the subsequent offer. On January 6th, he telegraphed Hadden, asking: "Have you deposit how much net to me wire answer," and received the following answer: "Eight fifty net fifty deposited guaranteed transfer on your communication." On January 7th he wrote Hadden, stating that he had advised the bank to deliver the deed upon the payment of eight hundred and fifty dollars, and on the same day he wrote the bank to deliver the deed upon such payment being made. Before the receipt of either of these communications, he on January 9th telegraphed Hadden: "Cannot accept offer on property. Letter explaining on the way," and to the bank he telegraphed: "Return deed made to J. S. Hadden to me at once cancel all negotiations." The bank at once complied with this direction. On January 10th he wrote Hadden, explaining that he had sold the property to another party for ten hundred and thirty-five dollars net. The foregoing is all the correspondence that is material. The offer referred to in the letter of November 22d was apparently not plaintiff's offer, the evidence showing that her offer was not made until January 3d.

Upon these facts the trial court was amply warranted in concluding that Hadden was not authorized to make the contract of January 3, 1905, or any contract of sale on behalf of Bass, and that his only authority in the matter, in addition to finding a purchaser, was to consummate a purchase by paying in cash to the bank selected by Bass as his agent the amount of money required by the instructions to such bank, and thereupon accepting the deed awaiting delivery upon compliance with such instructions. Until such consummation, in the absence of ratification or estoppel, Bass could be in no degree bound by any act of Hadden. The ordinary

authority of a real estate agent deputed to sell real estate is simply to find a purchaser, and he has no power to bind his principal by a contract of sale unless it appears that it was intended to confer such additional authority. (*Duffy* v. *Hobson,* 40 Cal. 240, [6 Am. Rep. 617] ; *Armstrong* v. *Lowe,* 76 Cal. 616, [18 Pac. 758].; *Delano* v. *Jacoby,* 96 Cal. 279, [31 Am. St. Rep. 201, 31 Pac. 290].) Whether or not it was intended to confer such additional authority is to be determined from the language used regarded in the light of the surrounding circumstances. (*Rutenberg* v. *Main,* 47 Cal. 213.) In the case at bar, additional authority was, of course, conferred, but the limit of such additional authority was very clearly defined. The evidence showing the additional authority affirmatively showed the want of authority on Hadden's part to bind Bass by any agreement to sell. All that he could effectually do was to consummate a sale by the payment of the requisite amount in cash to the bank and the acceptance of the deed there deposited, and the writings relied on showed no attempt to confer any other authority. Such writings showed very clearly that what Bass wanted was the immediate payment of the whole purchase price in cash, that he was willing to part with his property or any interest therein only upon such payment, and that he was unwilling to cloud his title by any agreement for sale with some unknown purchaser, who might ultimately prove unwilling or unable to complete his contract, the existence of which agreement might deprive him of the opportunity to sell for cash to some other person. (See *Duffy* v. *Hobson,* 40 Cal. 240, [6 Am. Rep. 617].) The case at bar is very different in its facts from *Rutenberg* v. *Main,* 47 Cal. 213, relied on by plaintiff, where it clearly appeared that it was intended by the owner to clothe the agent with authority to do generally whatever was necessary to make the proposed sale binding upon the principal.

There was no ratification of the agreement by Bass. It does not appear that he knew that Hadden had executed any agreement for sale in writing either on his own account or as the agent of Bass, until he had by telegraph refused the offer and communicated the fact of refusal to both Hadden and the bank. (See *Lambert* v. *Gerner,* 142 Cal. 399, [76 Pac. 53].) His letters of date January 7, 1905, to Hadden and to the bank cannot be construed as purporting to ratify any agree-

ment for sale made for him by Hadden, and they were super-
seded by the telegrams of January 9th, which were received
by Hadden and the bank prior to the receipt of the letters,.
and at once acted upon by them. No principle of estoppel.
applies to the case.

Our conclusion on the matters already discussed renders it:
unnecessary to consider any other point made.

The judgment and order are affirmed.

*Shaw, J.,* and *Sloss, J.,* concurred.