[Civ. No. 921.   Third Appellate District.—April 24, 1912.]

ROBERT A. CHURCH, Appellant, v. JOHN COLLINS,
Respondent.

ACTION FOR DAMAGES FOR BREACH OF CONTRACT TO SELL LAND—LIMITED
AUTHORITY OF BROKERS—CAUSE OF ACTION NOT STATED—GENERAL
DEMURRER.—A complaint in an action for damages for breach of a
contract to sell land, purporting to be signed by real estate brokers,
in the name of the vendor, and which sets forth their contract of
employment by the vendor, defendant, which merely shows that they
were employed to negotiate a sale, at an agreed price, for a specified
commission, reserving to the vendor the right to sell the property,
and agreeing to pay two per cent commission in case of sale, and
which contained no express authority to the brokers to make a bind-
ing contract of sale, states no cause of action, and a general de-
murrer thereto was properly sustained.

ID.—SETTLED RULES AS TO AUTHORITY OF BROKERS—POWER TO EXECUTE
CONTRACT MUST BE FREE FROM DOUBT.—Under the code provisions,
and the settled authorities with regard to the power or right of
brokers, as agents of the owner of land, to execute a contract of
sale for such owner, the settled rule is and ought to be that, if such
authority is intended to be conferred, the language used in con-
ferring it should be so clear, distinct, and certain in its meaning
to that end as to leave no room for doubting that such was its
purpose. The ordinary authority of a real estate agent is to find
a purchaser, and he has no power to bind his principal by a con-
tract, unless it was intended to confer such additional authority.

ID.—GENERAL TENOR OF AGREEMENT IN QUESTION—NULLITY OF ACTION
OF BROKERS.—It is held that the general tenor of the whole agree-
ment in question clearly shows an intention on the part of the
owner to limit the authority of the brokers merely to the procure-
ment of a purchaser ready, willing and able to buy the same, and
not to confer upon the broker the right or power to execute for him a
contract of sale; and that any act on the part of the brokers, beyond
the authority conferred, was a nullity, so far as any effect it was
designed to have on the owner was concerned.

APPEAL from a judgment of the Superior Court of So-
noma County.   Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

L. G. Scott, for Appellant.

H. W. A. Weske, and Jos. P. Berry, for Respondent.

HART, J.—The plaintiff brought this action to recover damages for the breach of an alleged agreement for the sale of certain real property.

A general demurrer to the complaint was sustained, and this appeal is by the plaintiff from the judgment entered after and upon the order sustaining the demurrer.

It appears that, on January 17, 1911, the defendant and the firm of Lyman & Briggs, real estate brokers at Sebastopol, in Sonoma county, entered into a written agreement by the terms of which the former constituted the latter as his agents for the sale of the property described in said agreement. Acting under what they conceived to be authority so to do as conferred upon them by said agreement, Lyman & Briggs, on the ninth day of May, 1911, for the defendant, entered into a written contract with the plaintiff for the sale of said property to the latter, and the main question arising upon said transactions and presented here is whether said real estate brokers were authorized or empowered by their agreement with the defendant to make such or any contract, for the latter, for the sale of said property.

Although the defendant addresses some criticism to the complaint generally, his principal contention seems to be that his agreement with Lyman & Briggs merely conferred upon them the right, exercisable for a limited period and for specified compensation, to secure for him a purchaser of said property ready, willing and able to buy the property on the terms embodied in said agreement, and, having obtained such a purchaser, their authority as thus established or conferred was completely exhausted.

Upon the construction of the agreement between the defendant and the real estate brokers, it is manifest the decision of this question must depend.

The parts of the agreement between the defendant and the real estate brokers important or necessary to the consideration of the question as to the extent of the authority thereby vested in the latter read as follows:

"In consideration of their efforts to sell the within described property, I hereby appoint Lyman & Briggs, of Sebastopol, California, to act as agents for the sale of said prop-

erty for the sum of $6,000.00, and I agree not to offer the same for a less price before the expiration of this contract without the consent of said parties. . . . It is further agreed that any deposit which may be paid on the purchase price of said property shall be paid to Lyman & Briggs, and in the event of forfeiture by the purchaser one-half of said deposit shall be paid to me, and the remaining one-half shall be retained by said agents in consideration of their services. This agreement shall be binding on me for a period of six (6) months from the date hereof and thereafter until canceled by a written notice of at least ten days. If sale is made within ninety days after the legal expiration of this contract, by or through me, to anyone to whom said property has been submitted by said agents during the term of this agreement, I agree to pay said agents a commission of 2 per cent on sale price. I reserve the right to sell said property myself, or to sell said property through the agency of anyone else, but I hereby agree that in case such sale be made by myself, or through any other agency, in consideration of their services to pay said Lyman & Briggs a commission of two (2) per cent on sale price."

The contract of sale entered into between the brokers and the plaintiff contained, substantially, the terms upon which the defendant authorized the agents to sell the property. The only difference between the two as to the terms or conditions is purely technical as distinguished from substantial, but under our conception of the transactions it is not necessary in any event to notice the alleged variance as to the conditions of the sale between the two instruments.

At the time, however, of the execution of said contract of sale, the plaintiff deposited with Lyman & Briggs, as "earnest" money, or as a payment on the price at which the property was to be sold to him in the event of the consummation of the sale, the sum of $230.

The agreement between the defendant and the real estate brokers and the contract of sale above referred to were annexed to and made a part of the complaint, as was also a letter, dated June 7, 1911, addressed by the plaintiff to the defendant, tendering a payment of $3,000 in coin to the latter, offering to execute a mortgage for the remainder of the purchase price and demanding from the defendant a conveyance

of the property "free and clear from all liens and encumbrances."

We are of opinion that the agreement between the defendant and the real estate brokers conferred no authority upon the latter to execute a contract for the sale of the property involved here to the plaintiff or to any other party, and that, therefore, the court properly sustained the demurrer to the complaint.

An agreement authorizing or employing an agent or broker to sell real estate for compensation or a commission must be committed to writing (Civ. Code, sec. 1624, subd. 5; Code Civ. Proc., secs. 1971, 1973), and "an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." (Civ. Code, sec. 2309.)

The result of the foregoing provisions of our law is that an agent is without power to execute an agreement for the sale of real estate unless he is authorized by the principal, in writing, to execute such agreement for and in the latter's behalf.

The rule deduced from the authorities with regard to the power or right of agents to execute contracts of sale of real property for the owners thereof is and ought to be that, if such authority is intended to be conferred, the language used in conferring it should be so clear, distinct and certain in its meaning to that end as to leave no room for doubting that such is its purpose. "The ordinary authority of a real estate agent deputed to sell real estate," says the supreme court in *Stemler* v. *Bass,* 153 Cal. 791, 795, [96 Pac. 809], "is simply to find a purchaser, and he has no power to bind his principal by a contract of sale unless it appears that it was intended to confer such additional authority." And it has often been held that the construction put upon the employment of brokers "to sell" or to "close a bargain" concerning real estate conferred no more than a mere authority upon the broker to find for the principal or owner of the property a purchaser at the price specified. (*Duffy* v. *Hobson,* 40 Cal. 241, 244, [6 Am. Rep. 617]; *Rutenberg* v. *Main,* 47 Cal. 213, 219.) Giving some of the reasons why the intention to confer authority upon a broker to sell the real estate of another should be manifested by the use of clear and distinct language, the court, in *Duffy* v. *Hobson,* 40 Cal. 241, [6 Am. Rep. 617], says: "A sale of real estate involves the adjustment of

many matters in addition to fixing the price at which the property is to be sold. . . . The vendor may be unwilling to deal with a particular proposed purchaser on any terms. He may consider him pecuniarily unable to comply with the contract even if the title prove satisfactory, and he may decline to bind himself to convey to such purchaser at the end of the time necessary to examine the title, because he might thereby in the meantime have an opportunity to sell to some other person who might desire to purchase, and in whose good faith and ability to pay he reposed entire confidence. All these considerations might, and usually do, arise in the mind of the vendor.''

The only covenant or provision contained in the agreement between the defendant and Lyman & Briggs which could by any possibility be made to bear the construction that the former intended by said agreement to clothe the latter with power to enter into a contract for the sale of said property is that by which the brokers were in effect authorized to receive a deposit from a proposed purchaser; but, when considered in connection with other parts of the agreement, that provision cannot reasonably be so construed or held to import an intention in the vendor to confer such authority upon the brokers. The agreement, it will be noted, merely constitutes Lyman & Briggs as the agents of the defendant ''for the sale'' of the property therein described, and makes other provisions usual in such agreements with brokers whose employment is limited to the securing of a purchaser, ready, willing and able to purchase. For instance, it reserves to the owner the right ''to sell said property''—that is, to find a purchaser—within the time within which the brokers are authorized ''to sell'' or find a purchaser, stipulating that in such case, if the proposed buyer has not previously had the matter submitted to him by the brokers, to pay the latter, nevertheless, two per cent on the purchase price. And the agreement contains a like provision as to compensation to the brokers in the event that the property is sold by the owner after the expiration of the time within which the brokers were authorized to procure a purchaser to a party to whom the proposition as to such sale has been previously submitted by said brokers.

In fine, the general tenor of the whole agreement is clearly demonstrative of an intention on the part of the owner to

limit the authority of the brokers merely to the procurement
of a purchaser, or, to state the proposition the other way, not
to confer upon the brokers the right or power to execute for
him a contract of sale. Indeed, we can perceive no substan-
tial distinction between the agreement here and the one in-
volved in the case of *Armstrong* v. *Lowe,* 76 Cal. 616, [18 Pac.
758]. There the agreement read as follows: "You are hereby
authorized to sell my property, and *receive deposit on same,*
situated . . . , and described as follows: . . . , for the sum
of two hundred dollars per acre, cash. I hereby agree to pay
you the sum of five per cent for your services in case you
effect a sale, or find a purchaser for the same, or will pay you
two and a half per cent of above commission should I sell the
same myself, or through another agent. This authority to
remain in full force for the term of three months, or until
canceled by," signed by the owner. The court held that that
agreement did not confer upon the real estate brokers with
whom it was made the authority to execute a contract to con-
vey, citing in support of its conclusion *Duffy* v. *Hobson,* 40
Cal. 241, [6 Am. Rep. 617].

The case here is radically different from the case of *Bacon*
v. *Davis,* 9 Cal. App. 84, [98 Pac. 71]. The agreement in
that case expressly and specifically conferred upon the agent
"the exclusive right to sell *for me, in my name* and receipt
for deposit thereon" the land described in said agreement.
After an exhaustive examination of the question whether the
contract to convey executed by the agent was authorized by
said agreement and binding on the principal, this court, re-
ferring to numerous authorities construing such agreements,
held that the agent was vested by the agreement with plenary
power to make the contract of sale, and that the contract was
valid and binding on the owner of the property involved.

A comparison of the agreement in the case at bar with the
one in the Bacon case will readily disclose a radical distinc-
tion between the two. Here there is no such authority given
the brokers as is necessarily implied from the language in the
Bacon agreement, "to sell *for me, in my name*"—language
that can import nothing short of an intention in the vendor
to bestow upon his agent the right and the power to execute
in *his* (the vendor's) *name* a contract to convey.

But there is no necessity for prolonging the discussion. It
is very clear to our minds that the limit of the authority the

defendant intended to confer upon *Lyman & Briggs* was to procure for him a purchaser of the property ready, willing and able to buy the same, and that consequently any act on their part relative to said property beyond such authority was a nullity, so far as any effect it was designed to have on the defendant was concerned.

The view thus taken of the transactions eventuating in this action renders it unnecessary to notice other less important points urged against the validity of the alleged contract of sale and the sufficiency of the complaint to state a cause of action.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.