[L. A. No. 3620. Department Two.—January 31, 1916.]

AMANDA M. SALTER, Respondent, v. FRED F. IVES (Sued Herein as Fred S. Ives) et al., Defendants; FRED F. IVES, Appellant.

AGENCY—AUTHORIZATION TO ENTER INTO CONTRACT OF LEASE.—The written authorization from the owner of land, in order that it may be sufficient to permit the agent to enter into a binding contract of lease, must express within its terms the intention of the owner to confer upon the agent complete authority so to do.

ID.—EMPLOYMENT OF AGENT TO SELL OR LEASE.—The mere employment by the owner of an agent to sell or lease his real property is usually insufficient as a grant of power to execute a binding conveyance or lease.

ID.—AUTHORIZATION "TO NEGOTIATE A LEASE"—SURROUNDING CIRCUMSTANCES.—A written authorization to an agent merely "to negotiate a lease" does not confer on the agent the power to enter into a contract of lease on behalf of his principal, and such authorization, not being uncertain in its terms, cannot be construed as conferring the power to lease by any consideration of the surrounding circumstances.

ID.—WHEN SURROUNDING CIRCUMSTANCES MAY BE CONSIDERED.—The surrounding circumstances may only be considered in construing a contract when its terms are such as to make the intention of the parties to it uncertain.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Tracy Chatfield Becker, and Herbert J. Goudge, for Appellant.

Karl E. Steinhauer, Willis I. Morrison, and Hunsaker & Britt, for Respondent.

MELVIN, J.—Plaintiff sued to quiet title to certain property in the city of Los Angeles.   Defendant Ives answered, asserting that he had obtained a lease of the property from one Toombs, who, as he alleged, was duly authorized to make such contract by the plaintiff.   Ives also by cross-complaint sought specific performance of this alleged lease.   The court sustained a demurrer to the amended answer and cross-complaint of Ives, and upon his failure to amend further, judgment was entered by default.   From that judgment defendant and cross-complainant appeals.

The only question involved in this appeal is whether or not Toombs was authorized to execute a lease for the property in question.   The writing on which appellant depends was signed by Mrs. Salter.   The opening paragraph was as follows:

"April 26th, 1912.

"Mr. F. L. Toombs, 620 S. Hill St., Los Angeles, Cal.

"Dear Sir: We hereby authorize you to negotiate a lease on the south fifty feet of lot eight, Ord's Survey, block twenty-five, Los Angeles, state of California, on the following terms, to-wit:"

Then follow the terms, including the construction of a building, the amount of rent, the duration of the lease, etc.   The concluding portion of the contract is as follows:

"In consideration of your efforts in negotiating said lease, I hereby agree, that in case you or others associated with you, shall secure a tenant on the above named terms, you or your assigns shall be entitled to a commission of $6,000 which I agree to pay out of the first year's rental.   If the first year's rental be payable in advance, then the commission shall be payable immediately in cash.   If, however, the rental, according to the terms of the lease shall be payable monthly, then I agree to pay the commission at the rate of $500 per month.

It is strictly understood that this is not an exclusive contract. This contract is good for six months and only six months.

"(Signed)    MRS. A. M. SALTER."

The appellant cheerfully concedes at the outset (as indeed he must) that the written authorization from the owner, in order that it may be sufficient to permit the agent to enter into a binding contract of lease, must *express within its terms* the intention of the owner to confer upon the agent complete authority so to do. (Civ. Code, secs. 1624 and 2309; Code Civ. Proc., secs. 1971 and 1973.) It is also conceded that the mere employment by the owner of an agent to sell or lease his real property will usually be held insufficient as a grant of power to execute a binding conveyance or lease. That these concessions embody the law on the subject there can be no doubt. Speaking of the power of an agent to sell or lease realty, the district court of appeal used the following language in the opinion in *Church* v. *Collins*, 18 Cal. App. 748, [124 Pac. 552]: "If such authority is intended to be conferred, the language used in conferring it should be so clear, distinct, and certain in its meaning to that end as to leave no room for doubting that such is its purpose." (See, also, *Duffy* v. *Hobson*, 40 Cal. 244, [6 Am. Rep. 617]; *Armstrong* v. *Lowe*, 76 Cal. 617, [18 Pac. 758]; *Grant* v. *Ede*, 85 Cal. 419, [20 Am. St. Rep. 237, 24 Pac. 890]; *Stemler* v. *Bass*, 153 Cal. 791, [96 Pac. 809].)

Appellant's contentions are, in brief, first, that the language of the contract, particularly the expression, "we hereby authorize you to *negotiate* a lease," confers on the agent the power to enter into a contract of lease on behalf of his principal, and, second, that the pleading of surrounding circumstances, such as Mrs. Salter's intention to leave the state and her absence from California during nearly all of the period of six months, limited by the terms of the contract of agency, as well as the fact that she was anxious to lease the premises in question, compel the interpretation of that agreement which he wishes us to give to it.

There is no force in his second point, because "surrounding circumstances" are only considered when the terms of a contract are such as to make the intention of the parties to it uncertain. (Civ. Code, secs. 1625, 1637, 1638, 1639.) If we adopt respondent's view that there is no uncertainty, then the surrounding circumstances are not pertinent (*Hawley* v.

·*Brumagim,* 33 Cal. 398; *Pierce* v. *Merrill,* 128 Cal. 472, [79 Am. St. Rep. 56, 61 Pac. 64]), and if we concede the existence of ambiguity or uncertainty, the agreement must be ineffective, because of the rule announced in such cases as *Church* v. *Collins,* 18 Cal. App. 748, [124 Pac. 552], that the language itself must be free from doubt. Unless, therefore, the power to execute a lease was clearly conferred by plaintiff by the terms of the agreement itself upon Toombs, the judgment in this case must be affirmed.

That the power to lease was not conferred upon the agent we are certain. Appellant's counsel argue learnedly that there is a vast difference between the expressions "to negotiate a lease" and "to negotiate for a lease"; that if the contract had been one merely employing Toombs to procure a tenant for the premises, the latter expression would have been used; and that the verb "to negotiate" means "to bargain," "to arrange for a sale," "to transfer for a valuable consideration." Conceding that the word "negotiate" may in some connections be construed to involve the sale or transfer of some property right, we are furnished with no authority holding that in contracts for the sale or renting of real estate it has ever been so interpreted. In *Oullahan* v. *Baldwin,* 100 Cal. 651, [35 Pac. 310], the contract under consideration was one by which the brokers were authorized "to negotiate a sale" of certain property. This court (page 655) used this language: "The brokers were simply authorized to negotiate a sale. Their contract was completed and their commissions earned when they produced a purchaser within the five days, ready and willing, and able to purchase upon the terms stated in the contract of employment." In *Lindley* v. *Keim,* 54 N. J. Eq. 423, [34 Atl. 1073], the court adopted this language of Mr. Vice-Chancellor Pitney (now a justice of the supreme court of the United States) : "The mere employment of an ordinary real estate broker to effect a sale of a parcel of land, even though the price and terms be prescribed, does not amount to giving present authority to such broker to conclude a binding contract for the same. Moreover, such authority is not usually to be inferred from the use by the principal and broker in that connection of the terms 'for sale' or 'to sell,' and the like. Those words in that connection usually mean no more than to negotiate a sale by finding a purchaser upon satisfactory terms." The term "negotiate" in an agreement

somewhat similar to this has been construed to mean ''conversation in arranging the terms of a contract'' (*Northrop* v. *Diggs*, 128 Mo. App. 217, [106 S. W. 1123]), and in the state of Washington it has been held that one empowered by a writing ''to make and negotiate a sale'' of real property may neither give an effective deed nor execute a contract for a deed to one desiring to purchase the land. (*Carstens* v. *McReavy*, 1 Wash. 361, [25 Pac. 471].)

The contract upon which defendant and cross-complainant seeks to build his case is clearly an ordinary agreement empowering an agent to procure a tenant and engaging to compensate him in the event of his success. It is absolutely lacking in authorization to consummate a lease in the name of the owner.

Neither *Rutenberg* v. *Main*, 47 Cal. 213, nor *Bacon* v. *Davis*, 9 Cal. App. 83, [98 Pac. 71], is in conflict with anything contained in this opinion. In the former, as was said of it in *Stemler* v. *Bass*, 153 Cal. 791, [96 Pac. 809], ''it clearly appeared that it was intended by the owner to clothe the agent with authority to do generally whatever was necessary to make the proposed sale binding upon the principal,'' and in the latter, as the court said in *Church* v. *Collins*, 18 Cal. App. 748, [124 Pac. 552] : ''The agreement in that case expressly and specifically conferred upon the agent 'the exclusive right to sell *for me, in my name* and receipt for deposit thereon' the land described in said agreement.'' In the contract here under review there was not even an exclusive agency, and there was no authorization for the doing of anything in the name of the owner of the property.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.