No. 36,289

MARY M. KEARNS, *Appellee*, v. H. G. CLARK and CLAIRE E. CLARK, *Appellants*.

(154 P. 2d 479)

Opinion filed January 6, 1945.

*Marvin O. Brummett*, of Concordia, argued the cause for the appellants.

*Douglas Hudson*, of Fort Scott, argued the cause and *Howard Hudson* and *Douglas G. Hudson*, both of Fort Scott, were on the briefs for the appellee

The opinion of the court was delivered by

DAWSON, C. J.: This action was begun before a justice of the peace to recover judgment for two months' rent of a business building in Fort Scott.

The cause was transferred to the district court, where it was tried without a jury.

In plaintiff's bill of particulars it was alleged that on April 26, 1941, she and defendants entered into a written lease of a certain

storeroom in Fort Scott for a period of one year beginning May 1, 1941, and ending April 30, 1942, at an annual rental of $1,020, payable monthly in advance, at the rate of $85 per month. It was alleged that at the end of that year defendants continued to occupy the premises with the consent of the landlord, and they continued to pay rent as provided in the written lease of 1941; but that they failed to pay rent for the months of August and September, 1943, which was past due when this action was begun. A copy of the lease was attached to plaintiff's bill of particulars. With its notarial acknowledgments it extends to five printed pages, but need not be reproduced.

Plaintiff prayed judgment for $170 and interest from the dates of default.

In their answer, which contained a general denial, defendants alleged that on or about January 1, 1942, while the first year's written lease was still running, it was orally agreed between one John T. Crain, "the authorized agent of plaintiff," and the defendants that after April 30, 1942, they should occupy the premises as tenants from month to month and not hold over under their written lease; and that when defendants vacated the premises, which was about July 31, 1943, they were tenants from month to month.

Defendants also alleged that on or about July 1, 1943, plaintiff personally told a Mrs. Mildred Royer, general agent of defendants and manager of their store in the tenanted premises, "to tell the said defendants to move out any time they desired," and that Mrs. Royer did so inform the defendants.

In their answer defendants further alleged that on June 28, 1943, they notified John T. Crain, agent for plaintiff, in writing, that they would vacate the premises on July 31, 1943, and would surrender possession thereof; and that they did so, and delivered the keys of the storeroom to him, and that said keys were accepted by him at that time.

Plaintiff's reply denied all the material allegations of the answer, and specifically denied under oath that John T. Crain was her authorized agent to bind her on any lease arrangements of the premises on January 1, 1942, or at any other time, and denied that he had authority on behalf of plaintiff to accept the keys of the property.

At the trial some sharp disputes of fact arose between the parties and their respective witnesses, but the principal incident relied on by defendants to terminate their tenancy was a letter written on

behalf of defendant H. G. Clark which was directed to and delivered to John T. Crain, agent for the plaintiff. It read:

"June 28, 1943

"To John Crain, agent for Mrs. J. R. Kearns:

"You are hereby notified that H. G. Clark will on the 31st day of July, 1943, terminate, quit, vacate and surrender possession to you of the following described premises, which he now occupies as your tenant, to-wit: [legal description] . . . commonly known as 7 S. Main Street, Fort Scott, Bourbon County, Kansas.

Dated at Fort Scott, Kansas, this 28th day of June, 1943.

Harry W. Royer,

Attorney for H. G. Clark."

It was rather obvious that after the expiration of the first year covered by the written lease, when defendants were permitted to continue to occupy the premises thereafter without a definite agreement of the parties to hold the tenancy for some future term less than one year, the defendants did by operation of law become tenants from year to year. The pertinent statute reads:

"When premises are let for one or more years, and the tenant with the assent of the landlord continues to occupy the premises after the expiration of the term, such tenant shall be deemed to be a tenant from year to year." (G. S. 1935, 67-502, and citations.)

See, also, *Sorensen v. Hendry*, 146 Kan. 337, 69 P. 2d 1114; *McElroy v. Ball*, 149 Kan. 284, 87 P. 2d 608.

However, the trial court did not find it necessary to decide what was the precise legal character of the Clarks' tenancy after April 30, 1942. It made some findings of fact—that the letter from Royer to Crain, dated June 28, 1943, quoted above, was delivered to Crain by Royer, and—

Finding No. 7: "In accordance with the said notice on the 31st day of July, 1943, the agent [of defendants] or defendants vacated the building and delivered the keys to John Crain."

Finding No. 8: "John Crain is the local general agent of the plaintiff who has, during the period of this controversy, had authority to collect rents, make ordinary repairs and negotiate leases for the plaintiff. Plaintiff's agency extended to other real estate owned by the plaintiff in Fort Scott."

Other findings merely stated the contentions and theories of the litigants and need not be reproduced.

The trial court concluded that plaintiff was entitled to recover on the issues joined, and judgment was entered accordingly.

Defendants present certain questions for our review which will be considered in sequence. They first contend that the letter of June

28, 1943, by Harry W. Royer, attorney for H. G. Clark, to John Crain was sufficient notice of defendants' intention to vacate the premises. This contention has several implied assumptions—that defendants were not then tenants from year to year, and that John Crain was the agent of plaintiff authorized to consent or acquiesce in defendants' right to terminate their tenancy and thus relieve them of further obligation to pay rent. We think this contention is untenable. The issue of Crain's authority to agree to or acquiesce in a termination of defendants' tenancy had been denied under oath. Defendants offered no evidence tending to show that he had such authority. Plaintiff's evidence which included much correspondence between Crain and his principal covered matters relating to this tenancy; Crain reported requests and proposals of H. G. Clark for improvements before a new lease would be made by the parties, and Crain also reported a proposition from the Clarks' manager to enlarge the storeroom and to rent another storeroom next to it which belonged to the plaintiff with a suggestion that an opening be made between the two storerooms, and making a tentative offer of $135 per month for the two storerooms. Crain invariably asked advice from his principal on all such matters, which tended to negative defendants' claim that delivery of Royer's letter to Crain was sufficient to bind his principal, and thus terminate the tenancy. (*Scale Co. v. Salt Co.*, 97 Kan. 514, 155 Pac. 942.)

Substantially the same question has received the attention of a number of eminent courts. Thus in *Dieckman v. Weirich*, 24 Ky. L. 2340, 73 S. W. 1119, where an ousted tenant sued his landlord for damages, claiming that the landlord's agent had agreed to continue plaintiff's lease, it was held that proof that the agent had authority to collect rent did not imply that he had authority to make a lease. In *Wieboldt v. B. Brew. Co.*, 163 Ill. App 246, 258 Pac. 692, it was held that an agent authorized to collect rents had no authority to change the terms of the lease. In *Salter v. Ives*, 171 Cal. 790, 155 Pac. 84, where the agent had written authority to negotiate a lease on certain city property in Los Angeles, it was held that such written authorization to an agent merely "to negotiate a lease" did not confer on the agent the power to enter into a contract of lease on behalf of his principal. In *Hamilton v. Fed. Land Bank*, 161 Miss. 743, 138 So. 352, it was held that an agent with authority limited to forwarding applications for purchase or lease of land to his principal was not authorized to make a lease. In *Lauffer v. Vial*, 153 Pa.

Super. 342, 33 A. 2d 777, it was held that where an agent is author-
ized to take charge of property it is not to be inferred therefrom
that he had authority to lease it, citing Restatement, Agency, § 67
(2).

See, also, 2 C. J. S. 1290.

In view of the foregoing authorities, if the alleged oral agree-
ment between H. G. Clark and Crain in January, 1942, that defend-
ants should occupy the premises as tenants from month to month
after the expiration of their written lease, April 30, 1942, was made,
which Crain denied, it is clear that Crain was not authorized to
make such agreement; and it was wholly ineffective to alter the na-
ture of the tenancy imposed by law in the existing circumstances,
to wit, a tenancy from year to year. And such relationship of land-
lord and tenants did continue between the parties after the expira-
tion of the written lease for the full ensuing year, May 1, 1942, to
April 30, 1943, and thereafter for at least two months into the sec-
ond succeeding year beginning May 1, 1943.

And since by operation of law the tenancy was one from year to
year, the letter of Harry W. Royer, attorney for H. G. Clark, on
June 28, 1943, to John Crain, agent of Mrs. J. R. Kearns, giving
notice that H. G. Clark would "terminate, quit, vacate and sur-
render possession to you" of the premises on July 31, 1943, did not
have the legal effect of terminating defendants' liability to pay rent
as tenants from year to year.

Appellants argue that they were led to believe that Crain had
sufficient authority express or implied to lease the property, to
make new leases, or to accept valid notices to quit. Since there
was no evidence to warrant such a belief and all the circumstantial
evidence was to the contrary, this argument is untenable. De-
fendants had no basis whatsoever for a belief that Crain had
either express or implied authority to alter their tenancy, whether
from year to year or for any less term. On this point the authori-
ties cited above are clear and to one effect. Defendants press other
authorities on our attention, all of which we have carefully con-
sidered. In effect they merely hold that where an agent has actual
or implied authority to lease or to agree to the termination of a
lease his principal is bound by such agent's agreement or acquies-
cence. That, however, is not the case we have to consider.

We have not failed to note that a Mrs. Royer, manager of de-
fendants' store, testified that in June or July, 1942, plaintiff told

her "to tell Mr. and Mrs. Clark that they could move at any time they wanted to," and that Mrs. Royer so informed Mr. Clark. While plaintiff denied having made this statement, even if she did so, it would not alter the character of the existing tenancy. Such an offer, if made, would have to be acted upon within a reasonable time. Defendants made no response to the alleged offer of plaintiff transmitted to Mr. Clark, but continued their occupancy of the premises for another year.

We see nothing further in this case to warrant discussion, but before concluding we wish to observe that there were disputed issues of material fact, which if determined by the trial court would have reduced this appeal to small compass, and perhaps would have rendered an appeal entirely useless. And it cannot be amiss to add that what we have said in this opinion touching the character of the tenancy after the expiration of the written lease term pertains to this action alone, and will not bind the parties if the disputed facts not decided in this lawsuit should be definitely determined in any subsequent litigation.

The judgment is affirmed.