[Civ. No. 20521.   Second Dist., Div. Two.   Dec. 23, 1954.]

JEAN LYNE, Appellant, v. DONALD BOWTON BONNER et al., Respondents.

William R. Walsh for Appellant.

Hampton Hutton for Respondents.

MOORE, P. J.—Appeal from a judgment of dismissal after general demurrer to the complaint had been sustained and plaintiff had declined to amend.

The complaint alleged that on September 8, 1953, defendants as tenants in common owned an undivided three-fourths interest in 800 acres of land in Los Angeles County; that defendants then contracted in writing with Messrs. Austin and Ream, real estate brokers, to sell within 90 days their interests in such land for $76,000 net on terms stated in

the contract and appearing in the margin hereof*; that on October 22, 1953, plaintiff executed a writing with Mr. Ream,

*"EXCLUSIVE AGENCY AGREEMENT

"In consideration of the mutual promises herein contained, we, the undersigned owners, hereinafter designated the Sellers, do hereby jointly and severally grant to E. R. AUSTIN and F. WESLEY REAM, real estate brokers, the exclusive right to sell all that property hereinafter described for a period of Ninety (90) days from date hereof for the sum of $76,000.00 net to Sellers (SEVENTY-SIX THOUSAND DOLLARS) exclusive of commission, payable one quarter thereof, to-wit: NINETEEN THOUSAND DOLLARS ($19,000.00) to be paid on close of escrow to be opened at the TITLE INSURANCE AND TRUST COMPANY, 433 South Spring Street, Los Angeles 13, California. The balance to be secured by a Note and Trust Deed payable thereafter in three (3) equal annual installments of NINETEEN THOUSAND DOLLARS ($19,000.00) each. The entire balance of the purchase price to be paid on or before three (3) years after close of escrow.

"After the first payment of NINETEEN THOUSAND DOLLARS ($19,000.00) has been paid to Sellers through said escrow, Sellers agree to release to Buyers, at Buyer's option, any portion or part of the property affected herein, said portion or part to be designated by Buyers and said land so released to be free of the security of the balance of the purchase price, provided access to the unreleased portions of said property is maintained by roads, easements or reasonable reservations, and Buyers agree to pay to Sellers and Sellers agree to accept ONE THOUSAND DOLLARS ($1,000.00) per acre for any land so released. Said payments of $1,000.00 per acre paid for said released land to apply on the total purchase price of the property affected herein until the full purchase price of $76,000.00 has been paid to Sellers.

"Interest on all unpaid balances due Sellers on the purchase price shall be at the rate of six per cent (6%).

"Evidence of title to be in the form of a policy of title insurance issued by the Title Insurance and Trust Company and to be furnished and paid for by Sellers, and Sellers agree to pay Seller's escrow fees.

"The description of the property affected herein is as follows:

"All those lands lying partly in Sections 20 - 30 - 31 and 32, Township 2 North, Range 13 West, consisting of approximately EIGHT HUNDRED (800) Acres more or less and known as the BONNER RANCH or BON-AIR HILLS. Correct legal description to be furnished in escrow.

"Either party hereto (sellers or brokers) may extend the time provided herein for a period of THIRTY (30) days after the time set forth in this agreement.

"WITNESS OUR HANDS THIS 8th day of SEPTEMBER, 1953

/s/ DONALD BOWTON BONNER

/s/ ROBERT JAMES BONNER

/s/ ELIZABETH JANE BONNER EDMUNDS

Mary Evelyn Lewis

SELLERS

[Wesley Ream's acknowledgment *that the signatories are true*]

/s/ E. R. AUSTIN (J.W.)

/s/ F. WESLEY REAM"

[EXHIBIT A]

one of such brokers, whereby plaintiff agreed to buy the three-fourths interest of defendants in the 800 acres and paid the sum of $500; that on October 27, 1953, she opened an escrow with a title company, deposited $500 and agreed to deposit in cash $13,750 and her promissory note for $42,750 payable to defendants, to be secured by a trust deed on the realty described in the contract of September 8, 1953; that defendants have at all times since October 27, 1953, refused to deposit their deeds in the escrow or otherwise convey their interests in the land; that on November 12, 1953, plaintiff tendered to defendants the sum of $13,750 and offered to deposit in the escrow her promissory note in the sum of $42,750 payable to defendants and to execute a trust deed on the same 800 acres, securing such note and to do all things required of her by "said agreement of sale"; that she has performed all the conditions of such agreement required of plaintiff and has been and is ready, willing and able to fulfill the agreement and to cause the balance of the purchase money to be paid; that the 800 acres is located in the city of Los Angeles and is described in the complaint.

A second count follows which emphasizes that while the contract of September 8 allowed the brokers 90 days to make a sale, it alleges that the contract permitted the sellers or the brokers to extend the time for an additional 30 days; *but the pleading does not allege an agreement of extension.* The absence of such an allegation is fatal. (*Waterman* v. *Banks,* 144 U.S. 394, 402 [12 S.Ct. 646, 36 L.Ed. 479].) She complains that by her offer of January 1, 1954, by opening an escrow on January 4 with $500, by agreeing to deposit $18,500 and to give a promissory note for $57,000, she met the terms of the "agreement" and bound the seller. The 90-day period expired December 7, 1953. An agreement for sale on January 1 was 24 days late unless the option for extension of 30 days had been exercised. Mr. Ream's writing on January 1 does not prove an extension of time was even discussed between broker and seller.

Moreover, there is no provision in the "agreement" to sell an undivided three-fourths of the 800 acres. That idea may have sprung to appellant's reasoning from the fact that the fourth owner of the 800 acres did not sign the "agreement." It was prepared for all four owners to sign. It was never signed by Mary Evelyn Lewis, one of the four. The complaint makes no attempt to implead the nonsigning owner.

█ By no system of legal logic can it be concluded that an authorization to procure a purchaser of land for $76,000 can be construed to mean that three fourths of the land may be sold for $57,000. The "agreement" was not executed and could not become obligatory upon any of the owners. Therefore, the complaint fails to allege a cause of action. (*Anthony Macaroni Co.* v. *Nunziato,* 5 Cal.App.2d 588, 590 [43 P.2d 315] ; Civ. Code, § 1624, subd. 4.) The agency agreement merely authorized the brokers to produce a purchaser with $76,000. A sale for a lesser sum was without authority. (Civ. Code, § 1624, subd. 5.) The brokers had no authority to execute a contract for sale of the land as attorneys in fact for the sellers. Such a power must be in writing signed by the owners. (*Stemler* v. *Bass,* 153 Cal. 791, 795 [96 P. 809] ; Civ. Code, § 1624, subd. 4.) █ The power to bind an owner to a contract, executed by a broker on behalf of the owner, must be so "clear, distinct and certain in its meaning to that end as to leave no room for doubting that such is its purpose." (*Church* v. *Collins,* 18 Cal.App. 745, 748 [124 P. 552] ; see *Salter* v. *Ives,* 171 Cal. 790, 792 [155 P. 84].)

Plaintiff's argument that the case of *Duffy* v. *Hobson,* 40 Cal. 240, is outmoded by reason of economic changes since 1870 is interesting and informative. But the law announced then is unchanged. It is fortified by section 1624, subdivision 4, *supra,* which requires an agency for the conveyance of real property to be created by a writing over the signature of the owner.

Judgment affirmed.

McComb, J., and Fox, J., concurred.