[Civ. No. 4060. Second Appellate District, Division Two.—August 4, 1923.]

MAISIE R. NORTON, Respondent, v. J. M. OVERHOLTZER et al., Appellants.

[1] AGENCY—REAL ESTATE AGENT'S CONTRACT—AUTHORITY TO SIGN CONTRACT IN PRINCIPAL'S NAME — CONSTRUCTION. — Although the language in a real estate agent's contract with a seller that "We hereby give to [the agent] the sole agency for the property [describing it] to be sold for not less than" a stated amount may be sufficient to constitute said agent the sole agent of the seller to negotiate a sale, it is insufficient to confer upon him the additional authority to sign a contract for the seller in the latter's name.

[2] EJECTMENT—POSSESSION UNDER VOID CONTRACT OF PURCHASE— RATIFICATION—EVIDENCE.- -In an action of ejectment brought against the defendants who were in possession of premises under a contract of purchase executed by the plaintiff's agent without plaintiff's authority, the claim that plaintiff ratified the contract of purchase cannot be sustained where the evidence discloses no such writing as is required by the rule that when the authorization must be in writing the ratification must also be in writing.

---

1. Power of real estate broker to make contract of sale, notes, 8 Ann. Cas. 851; Ann. Cas. 1917A, 522; 17 L. R. A. (N. S.) 210; 23 L. R. A. (N. S.) 982.

[3] ID. — ILLEGALITY OF CONTRACT — ESTOPPEL—EVIDENCE.—In such action, the evidence does not show that plaintiff is estopped from claiming that the contract of purchase executed by her agent without authority is not binding on her.

[4] ID.—ESTOPPEL—KNOWLEDGE.—There can be no estoppel when the facts are not known, as no one can be presumed to have waived that the existence of which he has not known.

[5] ID.—CHARACTER OF AGENCY—EVIDENCE.—In such action, where it was shown that when the contract of purchase in question was signed plaintiff's agent disclosed to defendants that he was acting for the plaintiff as her agent and had authority to sign for her, under such circumstances the agent could bind his principal only when acting within the scope of his authority, and it was incumbent upon the defendants to ascertain the scope of that authority.

[6] ID. — APPROVAL OF OWNER — CONSTRUCTION OF PROVISION.—The natural effect of the provision in the contract involved in such action that "in case this contract is not approved by the seller, such deposit is to be returned," was that unless the seller approved the contract no rights could be predicated upon it.

[7] LANDLORD AND TENANT—ENTRY UNDER VOID CONTRACT—PERMISSION OF OWNER—TENANCY AT WILL.—One who enters upon land with the permission of the owner under a void contract is a tenant at will, but such rule does not apply where the possession is obtained without the permission of the owner.

[8] ID.—ENTRY WITHOUT PERMISSION OF OWNER—DISPOSSESSION— NOTICE UNDER SECTION 789, CIVIL CODE, NOT REQUIRED.—The written notice required by section 789 of the Civil Code need not be given to dispossess occupants of real property who are in possession thereof under a void contract of purchase and without the permission or under the authority of the owner.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. B. Butler for Appellants.

R. W. Clapp for Respondent.

SHENK, J., *pro tem.*—This is an action in ejectment. Judgment was rendered in favor of the plaintiff for restitution of the premises and for the value of the use and occupation thereof. Defendants have appealed.

The plaintiff is the owner of a parcel of real estate and the improvements thereon situated in the city of Pasadena. The complaint is in the usual form. In their answer the defendants assert a right of possession under an alleged contract of purchase and sale the terms of which will be hereinafter noted.

On the seventeenth day of July, 1919, the plaintiff executed and delivered to M. W. Davis the following written authorization:

"We hereby give to M. W. Davis the sole agency for the property known as number 150 So. Bonnie Av., Pasadena, Cal., to be sold for not less than $2800, $500 or more cash, balance $25 or more per month until $1800 has been paid on acct. of principal and 7% interest. Buyer to secure $1000 loan and give to seller trust deed paid on monthly installments as above stated. M. W. Davis is to look after the rentals and collections and turn same over to G. Grant Stewart until his interests are satisfied or said agency of said M. W. Davis is revoked.

           "[Signed]    Mazie R. Norton."

On the nineteenth day of September, 1919, M. W. Davis, assuming to act as the agent of the plaintiff, signed and delivered to defendants an instrument in writing as follows:

           "Agreement of Sale and Purchase.
           "Office of M. W. Davis, Pasadena, Cal.
                    "September 19, 1919.

"Maisie R. Norton, her individual property, as seller, agrees to sell to J. M. Overholtzer and M. Catherine Overholtzer, his wife, as buyers, and said buyers agreed to buy from seller that parcel of realty with improvements, being in the city of Pasadena, Los Angeles county, California, described as property known as 150 So. Bonnie Av., Pasadena, California, on the following terms: Buying and selling price to be $2800.00, of which buyer has paid $25.00, receipt of which is acknowledged as deposit to M. W. Davis, agent for seller; balance of $2775.00 buyer agrees to pay as follows: $25.00 or more on the 19th days of October, 1919, November and December and January, 1920, at which time buyer is to pay $1000.00 cash on account of principal unless he desires to surrender this contract and vacate the premises, in which case said monthly payments already made are to be considered as rent money only. In case said $1000.00 is paid

as per above, then buyer is to continue said monthly payments of $25.00 or more per month until he has paid on account of principal the sum of $1800.00, at which time the property will be deeded to said buyer and a trust deed given to seller for remaining $1000.00, payable in monthly installments as above stated; said monthly payments include interest at rate of 7% per annum, to be computed monthly, at which time a new principal will be formed. Taxes for fiscal year 1919–20 to be paid half and half by buyer and seller in case buyer makes his $1000.00 as above stated, but if he surrenders contract these payments will apply as rent only and no taxes will be paid by buyer. . . . Seller agrees to pay M. W. Davis the agent's regular commission. . . . If title proves defective, or in case this contract is not approved by the seller, said deposit to be returned.

"[Signed]    J. M. OVERHOLTZER,

"M. CATHERINE OVERHOLTZER,

"Buyer.

"MAISIE R. NORTON,

"Per M. W. DAVIS,

"Agent Seller."

Pursuant to the foregoing contract the defendants paid to Davis the sum of $25 on the date of its execution, went into possession, and paid $25 on the nineteenth days of October, November, and December, and on January 16, 1920, paid to Davis the sum of $1,000, which was the amount due on January 19th in the event the defendants did not desire to surrender the contract and vacate the premises.

The trial court decided that the contract of September 19th was not binding on the respondent for the reason that it was not within the scope of the written authority of Davis. Appellants contend that this determination was error. An examination of the documents discloses that there is a wide variance in their terms. The authorization is specific. Assuming that by its terms Davis was vested with power to enter into a contract with a purchaser, such authority was limited to a price of $2,800 on terms of $500 or more cash and $25 or more per month until $1,800 had been paid on the principal. The agreement signed by Davis provided for a cash deposit of $25 and a further payment of $25 or more on the nineteenth days of October, November, and December, 1919, and January, 1920, "at which time

[without doubt meaning January 19, 1920] buyer is to pay $1000 cash on account of principal unless he desires to surrender this contract and vacate the premises, in which case said monthly payments already made are to be considered as rent money only." There is nothing in the contract binding the defendants to pay the purchase price unless at their option they elected to make the payment of $1,000 on January 19, 1920. As the purchasers were not bound to make any but the $25 payments prior to January 19th, the agreement amounted to no more than an optional arrangement whereby the defendants could surrender the possession at any time prior to January 19th and be under no further obligation to the seller.

But from the language of the authorization it cannot be concluded that Davis had authority to sign a contract of sale in the name of his principal. An agent's authority to sell real estate must be in writing. (Civ. Code, sec. 1624.) In the case of *Stemler* v. *Bass,* 153 Cal. 794 [96 Pac. 811], it is said: "The ordinary authority of a real estate agent deputed to sell real estate is simply to find a purchaser, and he has no power to bind his principal by a contract of sale unless it appears that it was intended to confer such additional authority. [Citing cases.] Whether or not it was intended to confer such additional authority is to be determined from the language used regarded in the light of the surrounding circumstances."

The appellants rely on the case of *Bacon* v. *Davis,* 9 Cal. App. 83 [98 Pac. 71]. In that case the plaintiff had executed a written contract in which he stated: "I hereby authorize said Lamance Real Estate Co. exclusive right to sell for me, in my name." The property was described and the terms of sale specifically stated. The real estate company obtained a purchaser and executed a contract of sale in the name of the principal, in accordance with the terms of the authorization. The plaintiff repudiated the contract and sought to avoid responsibility under it. After an extensive review of the authorities in this and in other states, it was held that the language of the authorization imputed a clear intent to vest in the real estate company a right to execute a binding contract of sale in the name of the principal and that the contract so signed was within the scope of the agent's authority. We find in the writing of July 17th no

authorization from respondent "to sell" the property "for her" or "in her name," nor any language which would impute an intention to confer upon Davis the right to sell "for her" in addition to his appointment as sole agent. [1] The only language upon which the contention of such additional authority is based is as follows: "We hereby give to M. W. Davis the sole agency for the property . . . to be sold for not less than $2800." That language may be sufficient to constitute Davis the sole agent of the respondent to negotiate a sale but it falls far short of being sufficient to confer upon him the additional authority to sign a contract for her in her name. The contract of September 19th was, therefore, signed by Davis wholly without authority. (See *Armstrong* v. *Lowe*, 76 Cal. 616 [18 Pac. 758], and *Duffy* v. *Hobson*, 40 Cal. 244 [6 Am. Rep. 617].)

It should be noted that the agreement provides that "in case the contract is not approved by the seller said deposit is to be returned." Therefore, unless the plaintiff approved the contract, or ratified it, or is estopped from denying its validity, the agreement was not binding on her. (*Stemler* v. *Bass, supra*.)

[2] It is not contended by the appellants that the respondent at any time formally approved the contract, but it is insisted that she ratified the same. But when the authorization must be in writing the ratification must also be in writing. (Civ. Code, sec. 2310; *Blood* v. *La Serena L. & W. Co.*, 113 Cal. 227 [41 Pac. 1017, 45 Pac. 252].) The evidence discloses no such writing.

[3] It is contended that the respondent is estopped from claiming that the contract of September 19th is not binding on her. The court found that respondent knew nothing of the contract until the sixth day of January, 1920. It is insisted that this finding is not supported by the evidence, and the argument is based on correspondence between respondent and Davis prior to January 6th. This correspondence has been examined but in none of the letters from Davis to respondent was it disclosed that an agreement for the sale of the property had been executed, and in none of the letters from the respondent to Davis was there an intimation that the former knew that such a contract existed. This was the situation even until January 13th.

The contract was executed on September 19th. On the 29th of the same month Davis stated in a letter to the respondent: "Have a prospect for sale." On November 20th he wrote the respondent concerning a certificate of title and, among other things, said: "I do not think that there is any doubt that the property is sold under contract, $1,000 of which will be due, if my memory serves, early in Jan. I had accepted $25 a month from the prospective buyer until that payment could be paid at the date above referred to." The respondent testified that she did not receive the letter of, November 20th. But assuming that she did receive it there was nothing in it to indicate that Davis had entered into a written contract in her name or had done anything except to negotiate with a prospective buyer with bright prospects for closing the deal. On January 5th he wrote concerning a fire which had partially destroyed the dwelling-house on December 20th, in which letter he referred to the property in question and stated: "I am expecting the man who has been in there since Oct. or Nov. as a prospective purchaser to buy the house. There is $1,000 due on the place from him, and which was due Jan. 1st, but owing to the fire he has been out of the city and I have been unable to talk to him. . . . The tenant was taking a bath and left the heater going full blast and think the fire took place in the heater." The letters from Davis to respondent negative the idea that he himself believed that a binding contract of purchase and sale had been entered into. If, however, he did believe that such a contract had been entered into his letters were so worded as to lead the respondent to believe that the sale was only in contemplation and that a tenant was occupying the premises who was a prospective purchaser. We find nothing in the correspondence which could be said to communicate to the respondent the fact that Davis had entered into a written contract in her name, and the finding is supported by the evidence. Indeed, the evidence shows that the respondent did not know of the contract until January 13th, when she first saw it in Mr. Davis' office.

It is further claimed that the respondent is estopped for the reason that she authorized Davis to make collections for her and that he took the original deposit and received subsequent payments under the contract. But the evidence shows that respondent did not know that these sums of

money had been received by Davis until January 13th, when she immediately refused to approve the contract, repudiated it, and revoked the agency of Davis to further act for her. [4] "There can be no estoppel when the facts are not known, as no one can be presumed to have waived that the existence of which he has not known." (*Wheaton* v. *North British etc. Ins. Co.*, 76 Cal. 429 [9 Am. St. Rep. 216, 18 Pac. 758]; *Puterbaugh* v. *Wadham*, 162 Cal. 618 [123 Pac. 804].)

The appellants contend that by the authorization given to Davis he was the ostensible agent of the respondent in the transaction, and sections 2316, 2317, and 2330 of the Civil Code are referred to in support of the contention. But no such question is involved here. [5] It was in evidence without contradiction that when the contract of September 19th was signed Mr. Davis disclosed to the appellants that he was acting for respondent as her agent and had authority to sign for her, and that no request was made by the appellants to ascertain the scope of his authority or to exhibit to them his written authorization. Under such circumstances Davis could bind his principal only when acting within the scope of his authority, and it was incumbent upon appellants to ascertain the scope of that authority. (*Mudgett* v. *Day*, 12 Cal. 139; *Davis* v. *Trachsler*, 3 Cal. App. 559 [86 Pac. 610].)

The contention is made that as no notice of revocation or repudiation of the contract was communicated to Mrs. Overholtzer the contract is still an obligation in her favor and binding on the respondent. But as we construe the contract the rights of the appellants are limited by its terms. [6] It provides that "in case this contract is not approved by the seller, such deposit is to be returned." The natural effect of this provision was that unless the respondent approved the contract no rights could be predicated upon it.

Since the contract was not approved by respondent, was not ratified by her and she was not estopped to deny its binding effect upon her, what was the nature of the possession of appellants? It is their contention that, assuming the contract of September 19th to be void, they were tenants at will and subject to dispossession only after one month's notice in writing, as provided in section 789 of the Civil Code. They rely upon the case of *Hall* v. *Wallace*, 88 Cal.

434 [26 Pac. 360], wherein it is said: "We think the entry and holding of the defendant under the void agreement constituted him a tenant at will." [7] It is well settled that one who enters upon land with the permission of the owner under a void contract is a tenant at will. (*Carteri* v. *Roberts*, 140 Cal. 164 [73 Pac. 818]; 24 Cyc. 1036 et seq.; 16 R. C. L., sec. 91.) But the rule does not apply where the possession is obtained without the permission of the owner. (Jones on Landlord and Tenant, 981; *Yellow Jacket M. Co.* v. *Stevenson*, 5 Nev. 224.) The broad statement in *Hall* v. *Wallace*, above quoted, and relied upon by appellants, obviously was not intended by the court to classify everyone who takes possession under a void contract as a tenant at will, in the absence of any permission or authority from the owner, but was intended to declare that the defendant, under the circumstances shown in that case, was a tenant at will. The record in that case has been examined. It was alleged in the complaint that the plaintiffs, Hall and Carpentier, entered into an agreement with the defendant under which the latter went into and retained possession at the will of the plaintiffs. The defendant in his answer set up an oral agreement of purchase with one John Watson as agent of the owner. There was evidence which would justify the jury in finding that Watson was a part owner of the property. The court instructed the jury that if they found from the evidence that the defendant went into possession under permission from the plaintiffs on an invalid contract of purchase, then the defendant was a tenant at will, and the jury so found. In the light of the allegations of the complaint, the evidence, and the instruction, the statement of the supreme court, above quoted, is in harmony with the general rule.

[8] We think that the possession of the appellants was not with the permission or under the authority of the respondent, and that the asserted possession under the contract in question was unwarranted. It follows that the written notice required by section 789 of the Civil Code was not necessary.

No other points require discussion.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.