[Civ. No. 2883.    Third Appellate District.—May 28, 1925.]

BARRIOS & CO., INC. (a Corporation), Respondent, v. J. R. GARRETT CO. (a· Corporation), Appellant.

[1] AGENCY—SALE OF RAISINS—AUTHORITY OF DISTRIBUTOR.—A letter from a company engaged in the business of buying and packing raisins to a wholesale distributor wherein said packing company, in reply to an inquiry from said distributor, states that it hopes to have three or four cars of grapes, "a part of which you are at liberty to sell for delivery just as soon as the raisins can be stemmed and boxed" at a specified price, and that "Any sales made would be subject to our confirmation," does not authorize said distributor to consummate a sale of the raisins, but merely confers on the distributor authority to offer any person desiring to purchase the raisins referred to therein an option to make such purchase, which option is subject to the right of said packing company to accept or reject.

[2] ID.—UNAUTHORIZED SALE.—Such distributor being without authority to make a sale of the raisins, the memoranda of an alleged sale, signed by it as agent of the packing company, are without legal force—they being wholly gratuitous writings, not binding upon the packing company.

[3] STATUTE OF FRAUDS—GOODS IN EXCESS OF TWO HUNDRED DOLLARS. To render valid a contract for the sale of goods and chattels at a

---

3.    See 12 Cal. Jur. 874.

price not less than two hundred dollars, the same, or some note or memorandum thereof, must be in writing, and subscribed by the party to be charged, or by his agent, unless the buyer accepts or receives part of the goods, etc., which are the subject of the sale, or pays at the time some part of the purchase money.

[4] AGENCY—UNAUTHORIZED SALE—IMPLIED AUTHORITY—ESTOPPEL—EVIDENCE.—In this action for damages for the alleged breach of two several contracts for the sale of raisins alleged to have been entered into between plaintiff and defendant, a raisin packing company, which contracts were not executed by defendant or its agent, but by a distributor who had been authorized merely to offer any person an option to make such purchase, subject to the right of defendant to reject or accept same, the evidence did not disclose any acts or conduct on the part of defendant from which it could be implied by third parties that defendant was dealing with or holding out said distributor as its agent in the sale of its raisins, but, on the contrary, the acts and conduct of plaintiff, as revealed by the evidence, were clearly evincive of the fact that it knew or realized at all times that said distributor was without authority to conclude a contract for the sale of the raisins.

[5] ID.—INVALID CONTRACT—ORAL RATIFICATION.—In such action, ratification of the unauthorized contract made by the distributor for the sale of raisins at a price in excess of two hundred dollars cannot be shown by testimony showing that, after such contract was made, the president of the defendant company stated to said distributor, over the telephone, that any proposition submitted for the sale of the raisins would be approved or confirmed or accepted.

---

(1) 9 C. J., p. 669, n. 48.   (2) 27 C. J., p. 293, n. 65.   (3) 27 C. J., p. 231, n. 62.   (4) 14A C. J., p. 408, n. 24.   (5) 27 C. J., p. 385, n. 25.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   T. I. Fitzpatrick, Judge.   Reversed.

The facts are stated in the opinion of the court.

Richard Belcher for Appellant.

Goldman & Altman for Respondent.

HART, J.—This action is for damages for the alleged breach of two several contracts alleged to have been entered into between the plaintiff and the defendant, whereby, so it is alleged, the latter sold and agreed to deliver to the former

two several lots of "Thompson's Seedless raisins, soda dipped," at a certain specified price.

The complaint is in two counts. The first is founded upon an agreement alleged to have been made by the parties on or about the fifteenth day of September, 1922, whereby the defendant agreed to sell to the plaintiff and the latter agreed to purchase from defendant, 2,400 cases of raisins, of the variety above described, "of the 1922 pack, delivery to be made immediately when said pack of 1922 was ready for shipment," the total amount to be paid by plaintiff to defendant therefor being the sum of $5,500, "f. o. b. cars, at Marysville." The second count or cause of action is upon a contract alleged to have been made the same day, between the parties, for 500 boxes of raisins of the same variety and pack as those above mentioned, for the sum of $1,156.25, "f. o. b. on cars at Marysville," to be shipped to plaintiff "immediately when said pack of 1922 was ready for shipment." The complaint, in appropriate language, alleges these facts, and further that the defendant refused, and has always refused, to perform the terms of said alleged contracts or any part thereof, while the plaintiff is and at all times has been ready, willing, and able to perform said contracts on its part; that by reason of the alleged breach by defendant of the contract declared upon in the first count of the complaint, the plaintiff has suffered damage in the sum of $2,850, and for the like breach of the contract forming the basis of the second cause of action stated in the complaint, plaintiff has been damaged in the sum of $593.75. The aggregate amount of damages prayed for as in compensation for the loss alleged to have been sustained by the plaintiff by reason of the alleged breach of the two contracts counted on is the sum of $3,443.75.

The answer consists of specific denials of the averments of both counts of the complaint.

Upon the issues thus framed a trial was had before a jury, who awarded the plaintiff a verdict for the sum of $2,356.25, in consonance to which judgment was entered. A motion for a new trial by defendant was denied, and the latter appeals from the judgment upon a record prepared according to the method prescribed by section 953a of the Code of Civil Procedure.

It is expressly conceded in the brief of counsel for the plaintiff that the facts as to the alleged making of both contracts sued on are identical, except as to the amount of the raisins and time for delivery, which, it is further likewise conceded, are not of importance on this appeal, hence, as counsel on both sides have so considered and discussed the points raised, so the appeal will be considered and disposed of upon the theory that the two contracts are one.

The primary and all-important question submitted for decision is whether the alleged agreements for the alleged breach of which plaintiff claims to have been damaged to the extent of the aggregate sum stated in the *ad damnum* clauses of the complaint are invalid or nonenforceable because they do not comply with the mandates of the statute of frauds. There are numerous other matters which are discussed in the briefs. One involves the contention by the defendant that whatever transactions the plaintiff through the said Green had concerning the purchase of raisins were between the former and one E. B. Wilcox, individually, or not as a representative or an officer or agent of the defendant. But, as to this and all other points, some of which are directly connected with and subsidiary to the points first above stated, it is to be said that, if we find ourselves required to hold that the agreements sued on are nonenforceable because they offend the statute of frauds, then, obviously, the case would come to an end and the consideration of the other points referred to would be purely academic and superfluous.

The plaintiff, prior to and at the time of the institution and the trial of this action, was engaged in the business of importing and exporting merchandise, including fruit, in the city of San Francisco, its principal place of business. The defendant, at the same time, at the city of Marysville, its principal place of business, was engaged in the business of purchasing raisins from growers and packing the same for the general trade. Warmington-Duff Company, connected with the transactions herein involved, was, at all times mentioned, engaged in San Francisco in the business of wholesale distributor of fruit products, or the business of fruit broker.

At all the times mentioned, Alberto Barrios was president of plaintiff corporation, E. B. Wilcox was vice-president and the secretary of defendant corporation, and L. C. Greene, Jr., sales-manager of the Warmington-Duff Company.

On the eleventh day of September, 1922, Greene, representing the Warmington-Duff Company, addressed the following letter to defendant:

"Gentlemen:

"Mr. Herbert Hynes of the Hynes Packing Company, of Sacramento, was kind enough to inform the writer that you purchased raisins from the growers and packed them for your trade.

"If you have any packed raisins to offer, please quote us, making your price read regular terms and 2½% per cent brokerage to us.

"At the present time, we are interested in Thompsons seedless raisins, soda dipped and would be glad to have you quote us on a car or less than car of same. Any attention you may give our request will prove to our mutual advantage.

"Yours very truly,

"WARMINGTON-DUFF Co.,

"By GREENE."

On the following day (September 12, 1922), defendant replied to the above letter. Said reply was written on a printed letter-head of defendant. On the left-hand corner thereof was printed the name of A. W. Lewis, as president, and on the right-hand corner thereof the name of E. B. Wilcox, as vice-president. Said letter reads:

"Warmington-Duff Co.

"San Francisco, California.

"Gentlemen:

"We acknowledge yours 11th.

"Replying thereto, would state that we are hoping to have three or four cars Thompson seedless soda dipped, a part of which you are at liberty to sell for delivery just as soon as the raisins can be stemmed and boxed on the basis 9½c, usual terms, f. o. b. cars Marysville. Any sales made would be subject to our confirmation.

"Yours truly,

"J. R. GARRETT Co."

The above letters—the one from Warmington-Duff Co. by
L. C. Greene, Jr., to defendant, and the last from the latter
to Warmington-Duff Co.—constituted all the writings directly
bearing upon the transactions involved herein between Warm-
ington-Duff Co. and the defendant.   In other words, there
was no other letter or writing, save and except the defend-
ant's letter to Warmington-Duff Co., dated September 12,
1922, from which any implication could possibly arise or be
drawn that the latter was ever authorized in writing to sell
the raisins to the plaintiff or any other person.   This is testified
to by said L. C. Greene, who, as seen, was acting, and did
at all times act, for Warmington-Duff Co. in the transac-
tions upon which this action is founded.   Greene testified
that, a day or two subsequent to the receipt by him of the
letter purporting to be from the defendant and dated Sep-
tember 12, 1922, he called at the office of the plaintiff cor-
poration and saw and communicated to the president thereof
the proposition contained in the said letter from defendant.
After some conversation with Barrios, Greene wired Wilcox,
from San Francisco, and under date of September 14, 1922,
as follows: "On receipt this wire please wire us option one
car preferably two Thompson seedless soda bleached packed
twenty fives at nine half cents cars Marysville less two and
two and half brokerage first half October shipment for cable
reply Saturday noon coast payment thanks Warmington-
Duff Co."

Greene testified that the Warmington-Duff Co. received
a reply to the above wire in the form of a letter written
on the stationery of the defendant.   The letter reads:
"Owing to more favorable offering, made us, cannot now
offer at less than nine three quarters less discounts men-
tioned or nine one quarter net Marysville.   This for one or
two cars subject acceptance by ten A. M. Saturday sixteenth
and subject to satisfactory assurance regarding payment.
While think early October delivery can be made owing to
existing conditions this cannot be guaranteed."

The original of the said letter was not produced, but a
copy thereof, which did not show the date of the letter nor
by whom it was signed, was introduced in evidence.   Greene,
however, testified that he believed that the letter was re-
ceived either on the 15th or 16th of September; that, at
any rate, it related to the negotiations relative to the sale

of the raisins referred to in the complaint, and that upon receipt thereof he again interviewed Barrios, president of plaintiff, and further proceeded with negotiations looking to the sale of the raisins to the plaintiff and that Barrios, acting for plaintiff, agreed to purchase the raisins. Thereupon, Greene, so he testified, called Wilcox on the phone, and thus getting in conversation with Wilcox, stated to the latter that ''he had a buyer for the raisins, told him the amount Mr. Barrios was willing to pay and asked him to enter the order for the raisins in question at 9½c, to which Mr. Wilcox replied that he would take the order as submitted by Mr. Greene.'' Immediately following this conversation, Greene prepared in triplicate a sales memorandum containing the terms of the agreement of sale as the same was finally completed by the conversation with Wilcox over the telephone. These several memoranda were designated, respectively, as the ''buyer's copy,'' the second as the ''seller's copy,'' and the third as the ''broker's copy.'' The seller's copy was forwarded to defendant, the buyer's delivered to the plaintiff and the broker's retained by Greene for the Warmington-Duff Co. The memorandum of the transaction involving the sale of the 2,400 cases and that of the transaction relative to the sale of the 500 cases were identical in form. Each of the memoranda, or the original and the copies thereof, contained the statement, ''all orders are subject to confirmation,'' and signed ''Warmington-Duff Co., per L. C. Greene, Jr.,'' initialed ''LCG/J.'' Except in so far as might be inferred from the words ''for account of J. R. Garrett Co., Marysville, California,'' contained in the memoranda, the instruments do not show that the Warmington-Duff Co. was acting as agent for the Garrett Company. No reply was ever made to said memoranda or anything done with reference thereto by the defendant or Wilcox, although it was admitted by the latter that the memoranda covering the two contracts were received by him. Green testified that agreements in writing, subscribed by plaintiff, and embracing the terms of the sale, as indicated by the memoranda, were to be and were in fact sent to defendant for its signature thereto immediately following the forwarding of the memoranda to the latter. Wilcox admitted the receipt of these writings or proposed written agreements.

It appears that, prior to the eighteenth day of October, 1922, the plaintiff, through the Warmington-Duff Co., forwarded to defendant instructions for the shipment of the raisins. Said instructions, so Wilcox stated, were received by him or the defendant. Defendant, up to said eighteenth day of October, made no reply to said instructions either by delivering raisins to plaintiff or by letter or other means of communication, and on that day Barrios went to Marysville to interview the defendant or Wilcox and ascertain the reason for the delay on the part of the latter in complying with the instructions theretofore given by plaintiff to defendant for the shipment of the raisins. Barrios testified that it was on the occasion of this visit to Marysville that he, for the first time, learned from Wilcox that it was claimed by the latter that the negotiations between him and Greene, representing the Warmington-Duff Co., relative to the sale and purchase of raisins, were carried on by him (Wilcox) in his own individual right or personal capacity and with reference to raisins belonging to him, individually, and not to defendant. Barrios, at that time, so he stated, insisted that his dealings looking to the purchase of the raisins were with defendant and not with Wilcox, as an individual, or in his own right, and that plaintiff would wholly depend upon and expect Garrett & Co. to carry out the terms of the agreements made by and between Wilcox, acting for defendant, and Greene, acting for the Warmington-Duff Company. Upon his return to San Francisco, Barrios, so he continued to testify, addressed to the defendant a letter (dated October 20, 1922) in which he requested definite information as to the time at which the raisins would be ready for shipment. "The only reply which he (Barrios) received to this communication was a telegram dated October 24, 1922, signed by E. B. Wilcox," in which he stated: "Have received no money; therefore call all negotiations off." (See respondent's brief, page 9.)

On cross-examination, Greene testified that it was not clear in his mind whether, in the conversation with Wilcox over the telephone, on the fourteenth day of September, 1922, the day on which the memoranda above spoken of were prepared the latter stated to him (Greene) that the raisins to which their negotiations related were not the property of defendant but that of Wilcox. Greene further testified

that he understood the words, "All orders subject to confirmation," substantially the language of the defendant's letter of September 12, 1922, to the Warmington-Duff Company, meant, and were intended to mean, that the seller "takes or accepts the order, and, in so doing, confirming the order"; that the Warmington-Duff Company never secured in writing an acceptance or confirmation of the order, or any reply to the written contracts expressing the terms of the agreements which he forwarded to the defendant. He stated that all his dealings regarding the raisins in question were with Wilcox. One of his communications by wire was addressed to Wilcox "in care of Garrett Co."; another, a letter was addressed to the Garrett Company, and contained the words, "Attention, Mr. Wilcox." Greene said that the "sales memoranda," above mentioned, contained no statement or made no reference to the execution of written agreements by the parties as in confirmation of the terms of said memoranda, but that such agreements were prepared, signed by plaintiff, and, at the request of the latter, forwarded to defendant, to be signed. Greene said that there was no acceptance or confirmation of his proposition to sell the raisins to the plaintiff other than that which was orally obtained from defendant through Wilcox in his conversation with Greene over the telephone immediately following the submission of the proposition to sell to plaintiff. In brief, Greene testified that, from the fifteenth day of September, 1922, the time he sent the sales memoranda to defendant, until the first day of December, 1922, he never received any written communication from the J. R. Garrett Company or Wilcox concerning the raisins in question.

It is clear from the evidence as shown by the foregoing statement that the plaintiff's claim that a contract whereby the raisins were sold to it is wholly predicated upon the letter from defendant under date of September 12, 1922, to the Warmington-Duff Co., and the purported oral ratification by Wilcox over the telephone of the proposition by Greene to sell to plaintiff, according to the terms of said letter. Indeed, there is no other evidence than that afforded by said letter and that of the telephone conversation showing or tending to show that a contract whereby defendant,

through the Warmington-Duff Co., or any other person, sold or agreed to sell the raisins to plaintiff.

[1] It is too plain to afford ground for legitimate discussion that the defendant did not intend by its letter of September 12, 1922, to invest the Warmington-Duff Co. with authority to consummate a sale of the raisins. The concluding language of the letter unquestionably supports this conclusion. The insertion in the letter of the words, ''Any sales made would be subject to our confirmation,'' clearly indicates that the intention of the defendant, if, indeed, as a matter of fact it authorized said letter to be written or its name subscribed thereto, was to limit the authority of the Warmington-Duff Co. in the matter of negotiating a sale of the raisins entirely to the act of procuring a purchaser, ready, able, and willing to purchase the fruit according to the terms stated in the letter. Indeed, the real effect of the letter was merely to confer on the Warmington-Duff Co. the authority to offer any person desiring to purchase the raisins referred to therein an option to make such purchase, which option was subject to the right of the defendant or Wilcox to accept or reject. (*Normart* v. *Safer et al.,* 67 Cal. App. 507 [227 Pac. 943, 946 et seq.]; *Norton* v. *Overholtzer,* 63 Cal. App. 388 [218 Pac. 637].) But the plaintiff does not seriously, if at all, undertake to combat the soundness of the construction thus given said letter. Indeed, the very fact that, through the Warmington-Duff Co., it besought the execution by defendant of memoranda and written agreements whereby a sale of the fruit according to the proposition contained in the letter would be completed, is plainly pregnant with the admission on the part of both plaintiff and the Warmington-Duff Co. that they fully understood that the authority conferred upon the latter by the letter was expressly restricted to the procurement of a satisfactory purchaser of the raisins, the proposal to buy, if any was received, being subject to ratification or confirmation by the defendant. [2] It follows that the memoranda of the alleged sale, signed by the Warmington-Duff Co. as agent of the defendant, were wholly without legal force. In other words, the Warmington-Duff Co., being without authority to consummate a sale of the raisins, its subscription to the written memoranda of the two agreements of sale as agent

of defendant was entirely gratuitous and the writings not binding upon the defendant or Wilcox. [3] To render valid a contract for the sale of goods or chattels at a price not less than $200, the same, or some note or memorandum thereof, must be in writing, and subscribed by the party to be charged, *or by his agent,* unless the buyer accepts or receives part of the goods, etc., which are the subject of the sale, or pays at the time some part of the purchase money. (Civ. Code, sec. 1624, subd. 4; Code Civ. Proc., sec. 1923, subd. 4.) There is no claim that the plaintiff paid any part of the purchase price or received any part of the raisins; and it is obvious that the alleged agreements did not satisfy the requirements of the code section just cited. In fact, it is plainly manifest that, since the memoranda contained a statement clearly indicating that the terms thereof were to be subject to confirmation by defendant, neither the plaintiff nor the Warmington-Duff Co. regarded them as binding unless so confirmed, or, in other words, that they regarded the act of the Warmington-Duff Co. in subscribing to the writings as agent of defendant as not imparting to the memoranda any binding force, so far as defendant was concerned.

[4] It is contended that defendant is estopped from denying the validity of the agreements by reason of certain acts and conduct of the defendant from which authority in the Warmington-Duff Co. to close a bargain for the sale of the raisins was implied, and that plaintiff was controlled by such acts and conduct in dealing with the Warmington-Duff Co. This position finds no support in the record. The evidence discloses no acts or conduct on the part of defendant or Wilcox from which it could be implied by third parties that it (defendant) was dealing with or holding out the Warmington-Duff Co. as its agent in the sale of its raisins. On the contrary, the acts and conduct of the plaintiff, as revealed by the evidence, were clearly evincive of the fact that it and its president knew or realized at all times that the Warmington-Duff Co. was without authority to conclude a contract for the sale of raisins. The written memoranda and the proposed written agreements and the circumstances attending their preparation and transmission to defendant by the Warmington-Duff Co. conclusively show this to be

true. A similar question as to the scope of the authority of an agent in a real estate transaction arose in *Norton* v. *Overholtzer,* 63 Cal. App. 388, 395 [218 Pac. 637, 640], where Shenk, J., *pro tem.* (now a supreme justice), said: "The appellants contend that by the authorization given to Davis he was the ostensible agent of the respondent in the transaction, and sections 2316, 2317, and 2330 of the Civil Code are referred to in support of the contention. But no such question is involved here. It was in evidence without contradiction that when the contract of September 19th was signed Mr. Davis disclosed to the appellants that he was acting for respondent as her agent and had authority to sign for her, and that no request was made by the appellants to ascertain the scope of his authority or to exhibit to them his written authorization. Under such circumstances Davis could bind his principal only when acting within the scope of his authority, and it was incumbent upon appellants to ascertain the scope of that authority. (*Mudgett* v. *Day,* 12 Cal. 139; *Davis* v. *Trachsler,* 3 Cal. App. 559 [86 Pac. 610].)"

The instant case, in this particular, if anything, is even stronger against the plaintiff than the same situation was against the appellants in the case from which the above excerpt is taken, for here it is clear that no inquiry by plaintiff as to the extent of the authority of the Warmington-Duff Co. in the premises was necessary, since all the authority vested in the latter was clearly expressed in writing, which was in its possession, and the written agreements were prepared by Greene and signed by plaintiff, and thereupon, at the request of the latter, forwarded to defendant for its approval and signature. These circumstances require no analysis to perceive and properly appreciate their effect. They plainly speak for themselves as to the question in hand.

[5] The claim that there was a ratification of the proposed sale is virtually considered above. The contention is, of course, based upon the testimony of the conversation over the telephone between Wilcox and Greene, in which, so the last-named testified, the former, in effect, stated that any proposition submitted for the sale of the raisins would be approved or confirmed or accepted by him or the defend-

ant. But that testimony was obviously incompetent as proof of that fact, if it was a fact. (Civ. Code, sec. 2310.) That section declares, *inter alia,* that ''a ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified.'' (See, also, *Norton* v. *Overholtzer,* 63 Cal. App. 388, 393 [218 Pac. 637]; *Blood* v. *La Serena L. & W. Co.,* 113 Cal. 227 [41 Pac. 1017, 45 Pac. 252].) As has been shown, such agreements as those in the instant case, being for the sale of goods at a price not less than but exceeding $200, are required to be in writing, and subscribed by the party to be charged or by his agent. (Civ. Code, sec. 1624, subd. 4; see, also, Civ. Code, sec. 2309; *Church* v. *Collins,* 18 Cal. App. 745, 748 [124 Pac. 552].)

There are, as above stated, other points presented here, but these, in view of the conclusion at which we have arrived, as indicated by the foregoing discussion, need not be considered.

For the reasons herein stated, the judgment is reversed.

Plummer, J., and Finch, P. J., concurred.

Respondent's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 25, 1925.