[Civil No. 2479.   Filed April 19, 1926.]

[245 Pac. 278.]

## I. ROSENZWEIG, Appellant, v. BRYAN AKERS, HARLOW AKERS and THE ARIZONA GAZETTE COMPANY, a Corporation, Appellees.

1. BROKERS—AUTHORITY OF AGENT WITH WHOM OWNER LISTS REAL PROPERTY FOR SALE IS GENERALLY LIMITED TO FINDING BUYER ON TERMS AND CONDITIONS STATED BY OWNER.—When owner of real property lists it with agent for sale, agent's authority is generally limited to finding a buyer on terms and conditions stated by owner, who may or may not close deal, as he wishes.

2. BROKERS—WHERE AGENT WITH WHOM REAL PROPERTY IS LISTED FOR SALE BY OWNER IS AUTHORIZED TO EXECUTE CONTRACT OF SALE, COURTS WILL ENFORCE HIS CONTRACT AS THAT OF OWNER.—Where agent with whom owner lists real property for sale is authorized, not only to find purchaser able, willing and ready to buy, but also to execute contract of sale, courts will enforce his contract as contract of owner.

3. BROKERS—AGENT'S CONTRACT OF SALE OF REAL PROPERTY LISTED WITH HIM BY OWNER, IF VARYING FROM AUTHORITY CONTAINED IN CONTRACT OF AGENCY, IS NOT BINDING ON OWNER.—If contract of sale executed by agent with whom owner lists real property for sale with authority to execute contract varies from such authority, contract made by agent is not binding on owner.

4. BROKERS—FOR CONTRACT OF AGENT WITH WHOM REAL PROPERTY IS LISTED FOR SALE TO BE BINDING ON OWNER, AUTHORITY OF AGENT MUST BE SUCH AS TO PERMIT MAKING OF IDENTICAL CONTRACT SUED ON.—For contract of sale by agent with whom real property is listed by owner to be binding on owner, authority contained in contract of agency must be such as to permit making of identical contract sued on.

5. BROKERS—WHERE AUTHORITY OF AGENT WITH WHOM REAL PROPERTY WAS LISTED FOR SALE PROVIDED FOR CERTAIN SUM CASH, "BALANCE FIRST MORTGAGE . . . MISSOURI STATE LIFE, . . . SECOND MORTGAGE . . . DUE MAY, 1925," HELD THAT CONTRACT EXECUTED BY AGENT, PROVIDING THAT PURCHASER SHOULD ASSUME SUCH MORTGAGES, WAS SO SUBSTANTIALLY DIFFERENT AS NOT TO

2.   Power of real estate broker to make contracts of sale, see notes in 17 L. R. A. (N. S.) 210; 23 L. R. A. (N. S.) 982; L. R. A. 1917F, 962.  See, also, 4 R. C. L. 362.

BIND OWNERS.—Where authority of agent with whom real property was listed for sale required certain amount cash, "balance first mortgage . . . Missouri State Life, . . . second mortgage . . . due May, 1925," *held* that, contract of sale entered into by agent, providing that purchaser should assume such mortgages, *held* so substantially different as not to bind owners; there being a vast difference in terms of payment.

6. BROKERS—OWNER LISTING PROPERTY WITH AGENT FOR SALE WITH AUTHORITY TO EXECUTE CONTRACT PROVIDING FOR DEFERRED PAYMENTS OR ASSUMPTION OF OUTSTANDING MORTGAGES HAS RIGHT, UNLESS DELEGATED TO AGENT, TO PASS ON PURCHASER'S INTEGRITY AND FINANCIAL RESPONSIBILITY, AND TO ACCEPT OR REJECT, AS HE PLEASES.—Owner listing real property with agent for sale, with authority to execute contract of sale providing for deferred payments or on assumption of outstanding mortgages, *held* to have right, unless delegated to agent, to pass on the buyer's integrity and financial responsibility, and to accept or reject contract, as he pleases.

7. BROKERS—CONTRACT OF SALE OF AGENT WITH WHOM PROPERTY WAS LISTED, REQUIRING OWNER TO FURNISH ABSTRACT SHOWING GOOD TITLE, AND SILENT AS TO WHEN POSSESSION SHOULD BE RENDERED, HELD A DEPARTURE FROM CONTRACT OF AGENCY REQUIRING OWNER TO FURNISH TITLE EITHER BY ABSTRACT OR TITLE INSURANCE, AND TO GIVE POSSESSION WHEN ABSTRACT WAS APPROVED BY BUYER'S ATTORNEY.—Where contract of agency under which owner listed real property with agent for sale required owner to furnish evidence of title, either by abstract or title insurance, with agreement to give possession when abstract was approved by buyer's attorney, *held* that, contract of sale executed by agent, requiring owner to furnish abstract of title showing good title and silent as to when possession should be surrendered, was a departure from agent's written authority.

8. BROKERS—CONTRACT OF SALE OF AGENT, NOT WITHIN WRITTEN TERMS OF HIS AGENCY, CAN BE RATIFIED BY OWNER ONLY BY A WRITING TO THAT EFFECT (CIV. CODE 1913, PAR. 3272).—Where contract of sale executed by agent with whom real property was listed for sale was not within written terms of agent's authority, *held*, in view of Civil Code of 1913, paragraph 3272, there could be no ratification of such sale by owners without a writing to that effect.

---

See (1, 2) 9 C. J., p. 526, n. 52, p. 527, n. 53, 54, p. 528, n. 55. (3) 9 C. J., p. 525, n. 43, p. 526, n. 52. (4, 5) 9 C. J., p. 526, n. 47, 52. (6) 9 C. J., p. 526, n. 52. (7) 9 C. J., p. 526, n. 52. (8) 9 C. J., p. 533, n. 99.

8. See 27 R. C. L. 413.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Joseph S. Jenckes, Judge. Affirmed.

Mr. I. J. Lipsohn, for Appellant.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellees.

ROSS, J.—The defendants, the owners of the property involved, signed and delivered to I. F. Wolpe the following writing:

"Sales Contract.

"2/24/25.

"Mr. I. F. Wolpe: You are hereby authorized and empowered, by us as the owner to negotiate for sales of the following described property, to wit:

"Legal description: Nos. 36, 38, 40, 42 North 1st Avenue, Phoenix, Arizona . . . city of Phoenix . . . and to receipt for a deposit on such; the price to be $46,250.00 payable on the following terms: $10,250.00 cash balance 1st mortgage $33,000. Missouri State Life . . . 2nd mortgage $3,000.00 due May, 1925 . . . taxes . . . rents . . . insurance to be prorated on the delivery of the deed . . . the undersigned to furnish evidence of the title either by abstract or title insurance, and agree to give possession when abstract approved by buyers attorneys.

"The above property to remain in your hands exclusively for 5 days. The above price is net to us.

"BRYAN AKERS,
"HARLOW AKERS,
"ARIZ. GAZETTE."

The following day Wolpe, representing himself as the agent of defendants, entered into the following contract of sale with the plaintiff, and accepted a deposit thereon as indicated, to wit:

"Mr. I. Rosenzweig, Phoenix, Arizona.—

"Dear Sir: As agent, for Bryan Akers, Harlow Akers and the Arizona Gazette Company, under their

written authorization, I offer to sell to you the following property: Numbers 36, 38, 40, and 42 North First avenue, Phoenix, Arizona upon the following terms:

"Total purchase price to be paid the owners: $46,-250.00 as follows: You assume present mortgage of $33,000 now held by Missouri State Life Ins. Co.; also assume the 2nd mortgage $3,000.00 now on the premises; balance of purchase price, namely, $10,250, to be paid by you on delivery of deed, less deductions and adjustment of all taxes, rents and insurance, which are to be prorated, on delivery of deed. I will require a deposit of $1,000 by you in order to bind this matter.

"Abstract of title will be furnished for approval by your attorney, showing good title, except for above two mortgages.

"My authority is in writing, and open for your inspection at any time.

"[Signed]   I. F. WOLPE, Agt."

"I agree to purchase the above property on above terms; deposit of $1,000 hereby made to bind contract. Dated February 25th, 1925.

"[Signed]   I. ROSENZWEIG."

"Feb. 25th, 1925.

"Deposit of $1,000 received by me on above matter.

"[Signed]   I. F. WOLPE,<br>"Agent for Owners."

The defendants having refused to perform the contract by making the conveyance as called for, this suit was instituted to compel such conveyance, or, in case that could not be decreed, for damages sustained, alleged to be $17,250.

On the twenty-fifth day of February, according to the complaint, the defendants delivered to plaintiff, at his request, the abstract of title to said premises for examination by the latter's attorney and the attorney refused to approve the title until and unless certain tax liens and a judgment lien for $10,000 against de-

fendant Arizona Gazette Company, and a mortgage for $48,000 executed by said company on said premises, were removed. It is further alleged that plaintiff on numerous occasions thereafter requested defendants to secure the discharge of said liens, and the defendants asked him to withhold any action until they could do so, and that on April 23, 1923, defendants informed plaintiff that they were in position to care for taxes and the judgment lien of $10,000, but were unsuccessful in arranging for the release of the mortgage for $48,000, and, in view of that fact, defendants could not and would not fulfill and carry out the contract for the sale of premises to plaintiff. The plaintiff's ability, readiness, and willingness to perform his part of the contract is alleged.

The defendants demurred to the complaint on the ground of insufficient facts to constitute a cause of action, and, the demurrer being sustained and judgment entered thereon, the plaintiff appeals and assigns as error such ruling.

The books are full of cases in which the power and authority of real estate agents are discussed, but they differ so much in their facts that we will not undertake to give any of them individual attention. We have been cited cases by both sides as supporting their respective views. The courts have adopted some general rules that run through and are common to all the cases. One of such rules is that, when the owner of real property lists it with an agent for sale, the agent's authority is generally limited to finding a buyer on the terms and conditions stated by the owner, who may or may not close the deal, as he wishes. *Halsey* v. *Monteiro*, 92 Va. 581, 24 S. E. 258. It is recognized, however, that the owner may authorize the agent, not only to find a purchaser able and

willing to buy, but to execute a contract of sale, and, when the agent's authority clearly and unmistakenly gives him the latter power and authority, the courts will enforce his contract as the contract of the owner. It is the contention of the plaintiff that the agent's authority in this case is of the latter character, whereas the defendants contend that it is of the former.

In our view of the case we do not find it necessary to decide whether the agent's authority was limited to bringing the parties together, leaving it to them to consummate the deal, or whether it vested the agent with plenary power and authority to execute in behalf of the owners a contract of sale, as was attempted. We will assume that his authority was of the latter character and proceed to a consideration of the question as to whether the terms of the sale contract are in accordance with the authority contained in the contract of agency. If it varies from such authority it is not binding upon the owners.

It is said in a note to *Spengler* v. *Sonnenberg*, 88 Ohio St. 192, Ann. Cas. 1914D 1083, 52 L. R. A. (N. S.) 510, 102 N. E. 737, that:

"It is a well settled principle of the law of agency, that one employed to effect a sale of real estate is confined strictly to the exercise of the power vested in him, and any act on his part which is beyond the scope of his authority is ineffective to bind his principal."

The authority of the agent must be such as to permit the making of the identical contract sued on, and not a contract differing from the one actually authorized. *Campbell* v. *Hough*, 73 N. J. Eq. 601, 68 Atl. 759. This proposition is too well settled to need citation of authority, and it only remains for us to determine whether the terms of the contract of sale

conform with the agent's authority. The terms of payment as contained in the agent's authority are expressed as follows:

". . . The price to be $46,250.00 payable on the following terms: $10,250.00 cash balance 1st mortgage $33,000. Missouri State Life . . . 2nd mortgage $3,000 due May, 1925."

This means, we take it, if it means anything, that the purchaser should pay off and discharge the two mentioned mortgages, so that they would no longer be obligations of the mortgagors, or at least that the purchaser should arrange for the release of the mortgagors from such mortgage debts.

The contract of sale, instead of providing that the purchaser pay off said mortgages, or secure the release therefrom of the mortgagors, provides that the purchaser shall "assume" such mortgages. While this promise to "assume" obligates the purchaser to pay mortgages, it does not have the effect of releasing the mortgagors; they are still personally liable to the mortgagees for whatever is due thereon. There is a vast difference in the terms of the payment authorized and the terms of the payment incorporated in the contract of sale. In the former there is to be a present payment to the owners of property of $10,250 cash and a payment of debts against the property in the sum of $36,000, while in the latter the $10,250 payment is made subject to deductions and adjustments of taxes, rents and insurance, and the $36,000 the purchaser agrees to assume without releasing the mortgagors from their obligation to pay. The actual liability would still exist, and, if the purchaser were financially irresponsible and the property should not for any reason turn out to be sufficient to pay the debt, the mortgagors could be made to pay it.

We think the authority of the agent clearly contemplated that the purchaser would either pay off the two mortgages or substitute for the old debtors new ones, and thus effect a complete novation of the mortgage contracts. The assumption of the mortgage debts would not have this effect, and was not within the authority of the agent. That the difference is substantial is obvious, and, being so, the owners of property were not bound by the contract of sale.

But should we construe the agency contract as authorizing the agent to agree to accept $10,250 cash and the buyer's assumption and agreement to pay the two mortgages against the property at a future time, the situation would not be changed. In such case the owner would necessarily reserve the right to pass upon the integrity and the financial responsibility of the buyer. The privilege of passing on the buyer's qualifications in these respects the owner would retain, unless expressly conferred upon the agent. The contract of agency to Wolpe does not delegate to him the power to select anyone willing to buy on part cash payment and a promise to make future payments of balance, and when the agent presented to the owners such an agreement they clearly had the right to pass upon the buyer's qualifications and to accept or reject the contract, as they pleased. The fact that the buyer in this case may have been eminently qualified to take care of the assumed obligation cannot change the rule, since that question was one for the sole determination of the owners, it not having been delegated.

In another respect there was a departure in the contract of sale from the agent's written authority. The latter requires the owners "to furnish evidence of the title either by abstract or title insurance," with the agreement "to give possession when abstract (is)

approved by the buyer's attorneys." The former requires the owners to furnish abstract of title "for approval by your attorney, showing good title except for above two mortgages," and is silent as to when possession shall be surrendered. In one the owner is required to exhibit "good title" and in the other "title" or "title insurance."

If one authorizes his agent to exhibit by abstract a title in him, he does not thereby empower such agent to agree with prospective purchasers that the title is good or perfect, because he may know that such a condition cannot (as happens in this case, as shown by the complaint) be complied with. The "title insurance" mentioned in the agent's authorization is wholly abandoned in the contract of sale, and the sale is made upon the condition of the abstract showing good title that will meet the approval of the purchaser's attorney. The contract of sale is silent as to when possession shall be given to purchaser. In such case the law would doubtless fix the time as of the date of the execution and delivery of deed and the payment of the purchase price, if that time ever arrived. The agent's authority fixes the time to give possession of premises as of the date the buyer's attorneys approved the abstract. For various reasons it is conceivable that the approval of the abstract and the consummation of the sale by the delivery of deed might not concur, and thus we have in the two instruments different dates for the delivery of possession—a very important part of the transaction, since from that date the management and *indicia* of ownership would change and new rights be' incepted. In the agent's authority the owners reserved the right to furnish an abstract of title or to furnish title insurance. In the contract of sale the alternative right to furnish title insurance is taken

from them, and they are made to agree to furnish an abstract of title showing good title.

Some reliance is placed by plaintiff upon the conduct of defendants in submitting abstract of title to him and in their efforts to remove certain encumbrances after the contract of sale was entered into, as indicating the construction of the contract by the parties, or as constituting a ratification of such contract of sale.

The construction placed upon a contract by the parties, when its meaning is involved in doubt, is often followed by the courts, but in this case it does not appear that defendants ever saw the contract of sale or that they knew its contents. And, since the contract of sale was not within the written terms of the agent's authority, there could be no ratification of such sale without a writing to that effect. 27 R. C. L. 413, § 125; *Norton* v. *Overholtzer,* 63 Cal. App. 388, 218 Pac. 637.

The statutes of this state require that the authority of an agent to make sales of real property shall be in writing (par. 3272, Civ. Code 1913), and it follows that an unauthorized sale, or a sale in excess of authority given an agent, could only be ratified by a writing.

For the reasons above stated, we think the order of the court sustaining the demurrer to the complaint was proper, and the judgment thereon is accordingly affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.