[Civ. No. 4379. Fourth Dist., May 19, 1952.]

STEWART MAGEE, Plaintiff and Respondent, v. B. B. BRECKENRIDGE, Appellant; STEWART MAGEE, as Receiver, etc., Intervener and Respondent.

Mack & Bianco for Appellant.

Kendall & Howell for Plaintiff and Respondent.

West, Vizzard, Howden & Baker for Intervener and Respondent.

GRIFFIN, J.—Plaintiff brought this action against defendant to recover $3,560.81 for the reasonable value of services and material claimed to have been furnished to defendant. The court found that defendant B. B. Breckenridge was indebted to plaintiff individually for $2,514.81 and to him as intervener and as trustee and receiver for B. G. & S. Drilling Company, a copartnership, in the sum of $600. By stipulation, Stewart Magee, as receiver, was permitted to intervene in this action.

Defendant answered, denied generally the allegations of the complaint, and alleged, as a separate defense, that defendant was the owner of a lease upon certain proven oil-producing property near Newhall; that one Harris was the agent of plaintiff; that plaintiff was the operator of a portable oil well digging rig; and that he, as principal, instructed Harris, as agent, to secure work for his rig and also secure for him leases in that district; that about December, 1949, defendant agreed with Harris, as agent, that if plaintiff would recondition a certain oil well on defendant's land and furnish his outfit, etc., before December 12, defendant would give plaintiff a lease on certain of his properties, subject to a royalty of 26⅔ per cent; that a memorandum agreement (set up in the answer) to wit:

"12/2/49.

"C. A. Harris—

"If you will have your rig on my #1 well within 5 days (& work up to six days 24 hrs per day you furnish bits, Rig men, repairs to Rig etc. I to furnish cement mud electric log, whipstock & liner,) Then I will give you a lease on all my property west of my tanks—at 26⅔ Royalty total You to drill a well within 30 days after moving off my #1 well—

B. B. Breckenridge."

was signed by Harris and defendant; that plaintiff moved his portable rig upon defendant's land on December 11, and operated it until December 18, when his rig became unusable because of mechanical failure, and plaintiff discontinued his work and the contract; that defendant thereafter, at his own

cost, repaired said rig and undertook to continue said work until January 6, 1950, at which time the work was completed; that early in December, 1949, defendant executed and delivered to Harris, as agent, a lease of defendant's property, as agreed, and that on January 17, 1950, to amplify the description of the property in the first lease, defendant executed and delivered a similar substitute lease. Defendant prayed that plaintiff take nothing by reason of his complaint.

The court found that plaintiff furnished services and material to the defendant in the amount noted; that it was not true that Harris was the agent of plaintiff and not true that plaintiff, as principal, instructed Harris, as agent, to secure work and leases for plaintiff upon proven oil properties, and that defendant was the owner of a lease upon proven oil property; that it was true that on December 2d defendant signed an agreement with Harris, in accordance with the terms of the memo agreement pleaded; that it was true that on December 9th plaintiff moved a rig upon defendant's land and pursued said work; but that it was not true that defendant repaired, at his own cost, the rig and continued the work until it was completed; that it was not true that defendant executed and delivered to Harris, as agent of plaintiff, the lease or substitute lease mentioned. It found that the defendant did not deliver or offer to deliver to plaintiff any gas and oil lease until January 31, 1950, and that the said attempted delivery at that time was not reasonable and was not prompt delivery within the terms of the agreement of December 2, 1949. Judgment was entered accordingly, from which defendant appealed.

The evidence shows that plaintiff and Harris were together interested in an "oil deal." Plaintiff then was receiver for B. G. & S. Drilling Company and it owned a portable drilling rig which it rented to different drillers. Harris was a creditor of that company. According to plaintiff's story, Harris called plaintiff and told him he was selling drills to various companies in the different oilfields and that if he found work for this rig he would recommend it to any prospects he found; that plaintiff personally never took any drilling contracts but the usual method of renting it was $50 per day, from the time it left Bakersfield until its return, including standby time, and lessee would keep up all repairs; that Harris phoned him and stated that he had interested Breckenridge in giving an oil drilling lease on certain property; that plaintiff was to rent the rig from the B. G. & S. Drilling

Company for 6 days at $50 per day, and furnish certain labor and material and defendant would, in turn, furnish certain materials for the purpose of rehabilitating defendant's well located near the property and that upon completion of this agreement defendant would immediately deliver a lease on defendant's land and in plaintiff's name. Thereafter, plaintiff and defendant made and discussed this transaction. Plaintiff moved the rig to defendant's well on December 11, 1949. After several days' operation some mechanical trouble was encountered. After the sixth day plaintiff paid all workmen up to that time. It is plaintiff's claim that by some separate oral agreement then made between defendant and plaintiff, defendant agreed to take over the drilling operation, repair the machinery and pay to plaintiff $50 per day for the use of the drill thereafter until the work was completed; that the defendant then furnished the necessary material and labor until the drilling outfit was removed from the well on January 4, 1950, or about 18 days after the six-day period mentioned in the original agreement. Harris worked with the driller through both periods. Defendant claims that a memo lease (omitting the legal description of the leased property) was made up and delivered to Harris about December 15, 1949, but that it was never acknowledged; that he was awaiting time to have his attorney write up a proper lease which would contain all the necessary legal requirements and description; that such a lease was never acknowledged until January 17, 1950; and that a copy thereof was delivered to Harris. It appears that the urgency for immediate drilling had subsided and as Harris described it, plaintiff said "the honeymoon is all over. . . . I have spent enough money." Shortly before January 18, plaintiff sought an attorney who wrote to defendant informing him that he had not performed the conditions of his agreement relative to the leasing of his property to plaintiff and that accordingly plaintiff terminated the oral agreement entered into about "December 3," and that plaintiff expended $2,885.45 in reconditioning defendant's well and asked immediate adjustment of the matter.

On January 31, plaintiff's attorney received a reply from defendant's attorney setting up the written agreement of December 2d and stated that defendant had made up a penciled form of lease and had planned to reduce it to a more formal lease and that on January 7th, defendant executed a more formal lease and delivered a copy to Harris. Plaintiff

denied receiving the first penciled lease form and refused to accept the more formal one when presented by Harris after January 17th. The new lease was made by defendant, as sublessor, to both Harris and Magee as sublessees and apparently did not cover a small portion of the property pointed out to plaintiff as being a part of the property involved. Plaintiff claimed that Harris had no interest in that lease and accordingly he should not have been named as one of the lessees.

The only contention raised by defendant is that there has been a complete failure of proof because the pleading is based upon an implied contract for the payment of the reasonable value of services performed, whereas, the evidence shows the existence of a special contract fully performed by the plaintiff, and calling for the delivery from the defendant of something other than the payment of money, and accordingly plaintiff must bring his cause of action for breach of contract and not for value of services performed, citing *Gillin* v. *Hopkins*, 28 Cal.App. 579 [153 P. 724]; *Barrere* v. *Somps*, 113 Cal. 97 [45 P. 177, 572]; *Moulton* v. *Loux*, 52 Cal. 81; *O'Connor* v. *Dingley*, 26 Cal. 11; *Willett & Burr* v. *Alpert*, 181 Cal. 652, 659 [185 P. 976]; *Foster* v. *Fisher*, 44 Cal. App.2d 33 [111 P.2d 935]; *Ward* v. *Stimson*, 50 Cal.App. 336 [195 P. 67]; and *Flinn & Treacy* v. *Mowry*, 131 Cal. 481, 486 [63 P. 724, 1006].

It is defendant's position that at the trial plaintiff proceeded on a common count of *quantum meruit* for the very obvious reason that he did not feel there was an express contract which could be the basis of a cause of action since he denied that Harris was his agent and that since Harris was not his agent, as found by the court, it would be inescapable that there was not an express agreement between the plaintiff and the defendant, as pleaded in the answer, and accordingly such an agreement had no legal significance in the case at bar; that since the trial court concurred in the plaintiff's view of the facts Harris could not effectually contract with defendant on behalf of plaintiff under the circumstances; that therefore the only way that there could be an express arrangement between the defendant and plaintiff would be through a direct agreement between them, citing *Norton* v. *Overholtzer*, 63 Cal.App. 388 [218 P. 637].

Plaintiff argues that his evidence shows that there was an independent discussion between plaintiff and defendant concerning the proposed agreement to enter into an agreement

between the parties respecting the work, but that no formal or express agreement was ever made, and that accordingly an agreement that parties will in the future make such contract as they may then agree upon amounts to nothing; that an agreement to enter into negotiations and agree upon the terms of a contract if they can, cannot be the basis of a cause of action, citing *Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Corp.*, 61 Cal.App.2d 55, 56 [141 P.2d 938] ; *Spinney* v. *Downing*, 108 Cal. 666 [41 P. 797] ; and *Toms* v. *Hellman*, 115 Cal. App. 74 [1 P.2d 31].

As a further defense it is argued that if it may be assumed that the parties entered into an express agreement upon which a suit in contract could be based, nevertheless, plaintiff was justified in proceeding upon assumpsit; that where ''one party to a contract has not actually prevented performance but has merely committed a breach of the contract, after partial performance, the other party cannot maintain a suit upon the contract as for a full performance, although he may treat the contract as terminated and sue for the reasonable value of that which he furnished under the contract.'' (4 Cal.Jur. 10-Yr.Supp. pp. 199-200, § 276; *Gray* v. *Bekins*, 186 Cal. 389 [199 P. 767] ; *Connell* v. *Higgins*, 170 Cal. 541 [150 P. 769] ; *Carlson* v. *Sheehan*, 157 Cal. 692 [109 P. 29] ; *Cox* v. *McLaughlin*, 76 Cal. 60 [18 P. 100].)

▮ The portion of the judgment predicated upon the claimed oral agreement between the parties respecting the last 18 days' rental of the drilling rig at $50 per day is fully supported by the evidence and a recovery under the common count alleged is proper. Defendant makes no particular complaint to the allowance of this item or to the manner in which it was apportioned by the judgment.

The written instrument of December 2d, upon which defendant relies, might well indicate that plaintiff was to receive, in return for the use of the drilling rig for six days and for the material and services furnished, an oil lease on certain real property rather than money.

The evidence is in dispute as to whether, under this agreement or in the custom of the business, defendant was chargeable with the rental value of the rig and cost of labor and materials furnished while the rig was not operating during that six-day period. The evidence shows that plaintiff claims he paid $300 for the rental of the rig and paid the workmen and other incidental expenses, totaling $2,885.45 during such time. The court might well have believed that before plain-

tiff had an opportunity to fully perform under his original agreement, defendant interfered and took over the operation of the rig and completed the work under a new and substituted oral agreement.

Accordingly, the trial court was justified in believing that plaintiff had at least partially performed his portion of the agreement entered into between plaintiff and defendant and that after such partial performance, defendant committed a breach of the contract and that plaintiff treated the original contract as terminated and rescinded and elected to sue for the reasonable value of that which he did furnish under the original contract.

Under the authorities cited by plaintiff the amount found due to plaintiff was not only allowable under the common count of *quantum meruit* but was supported by the evidence.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.